**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ANTHONY RICHARDS, SR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:  1:07-cv-261-WKW** |
| | ) |
| **SHERIFF DAVE SUTTON, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' SPECIAL REPORT**

COME NOW Coffee County Sheriff Dave Sutton and Coffee County Jail Administrator Richard Moss, Defendants in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On March 26, 2007, Plaintiff filed his Complaint with this Court, naming the Coffee County Sheriff's Department,[1] Sheriff Dave Sutton, Captain Richard B. Moss, Jail Administrator, and Corrections Officer Dallas Gibson.[2]  On March 28, 2007, the Court ordered these Defendants to file a Special Report.  (Doc. 6.)  On April 5, 2007, Plaintiff filed a Motion to Amend and an Amended Complaint.  (Docs. 9 and 12.)  On April 9, 2007, the Court granted Plaintiff's Motion to Amend and extended the time for the Defendants to file a Special Report to May 18, 2007.  On May 2, 2007, the Defendants filed a Motion for Extension of Time to File

---

[1]   The Magistrate Judge also issued a Report and Recommendation that recommended dismissal of the entity identified as the "Coffee County Sheriff's Department."  On June 4, 2007, the District Court adopted the Magistrate Judge's recommendation.  (Doc. 7.)

[2]  Although this Special Report is submitted on behalf of any Defendants considered bound by the Court's Order, any references to "Defendants" herein refers only to Sheriff Dave Sutton and Captain Richard B. Moss, unless otherwise specified, because Corrections Officer "Dallas Gibson" has not yet been served with a copy of the Complaint or the Court's Order for Special Report.

Their Special Report and Answer. On May 2, 2007, the Court granted the Defendants' Motion and extended the time for the filing of a Special Report to June 16, 2007.

## PLAINTIFF'S ALLEGATIONS

Plaintiff appears to make one state law and three federal claims. First, Plaintiff appears to make a state law negligence claim based upon a motor vehicle accident that occurred on March 9, 2007. Second, based upon the same incident, the Complaint appears to allege a "failure to protect" claim under 42 U.S.C. § 1983. Third, based upon alleged injuries sustained in the same motor vehicle accident, Plaintiff attempts to state a denial of medical care claim. Finally, Plaintiff alleges an access to courts claim based upon his allegations of tampering with legal mail.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

The Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. The Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive Plaintiff of any right to which he was entitled. The Defendants raise the defenses of Eleventh Amendment immunity, absolute immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. The Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Plaintiff was incarcerated in the Coffee County Jail on January 17, 2007, on charges of receiving stolen property second degree and reckless endangerment. (Exhibit A, Inmate Records of Anthony Richards, "Inmate Records," Intake Sheet.) Plaintiff was placed on a work detail that involved transporting him away from the Coffee County Jail. (Exhibit B, Affidavit of Dallas Hudson, Jr., "Hudson Aff.," at ¶ 4; Exhibit C, Affidavit of Richard B. Moss, "Moss Aff.," at ¶ 4;

Exhibit D, Affidavit of David T. Sutton, "Sutton Aff.," at ¶ 7.)

### A.     The Motor Vehicle Accident

On March 9, 2007, Jailer Dallas Hudson, Jr., was transporting Plaintiff and another inmate, Jarvis Robinson, to the work detail. (Hudson Aff. at ¶ 4; Moss Aff. at ¶ 4; Sutton Aff. at ¶ 7.) Jailer Hudson was driving a 1998 Chevrolet club cab truck in which Inmate Robinson was riding in the front passenger seat and Plaintiff was seated immediately behind Inmate Robinson. (Hudson Aff. at ¶¶ 4-5; Exhibit E, Alabama Uniform Traffic Accident Report, "MVA rep." at p. 1.) The three men were traveling on a dirt road designated as County Road 232 at approximately 15 miles per hour. (Hudson Aff. at ¶ 6; MVA rep. at p. 1.) The speed limit on County Road 232 is 35 miles per hour. (MVA rep. at p. 1.)

Simultaneously, Anthony Leon Howell was driving a 1991 Toyota pickup truck in the opposite direction on County Road 232. (MVA rep. at pp. 1-2.) Mr. Howell was traveling between 40 and 50 miles per hour. (MVA rep. at p. 1; Hudson Aff. at ¶ 6.) As Mr. Howell topped a rise in the road, he apparently saw the truck driven by Jailer Hudson and began braking. (Hudson Aff. at ¶ 8.) As noted by the investigating officer, Mr. Howell was traveling too fast for conditions and his truck went into a skid. (MVA rep. at p. 2.) Jailer Hudson saw Mr. Howell's truck and brought his vehicle to the far side of the road and came to a stop. (Hudson Aff. at ¶ 7.)

Mr. Howell's truck slid completely across the road and struck the truck driven by Jailer Hudson. (Hudson Aff. at ¶¶ 8-9; MVA rep. at p. 2.) The front left quarter panel of Mr. Howell's truck struck the left front quarter panel of the county truck. (Hudson Aff. at ¶ 9; MVA rep. at p. 2 (diagram).) At the time of the impact, Mr. Howell was traveling at approximately ten to fifteen miles per hour. (Hudson Aff. at ¶ 10.)

After the impact, Jailer Hudson asked the inmates if they were injured. Inmate Robinson said that he was not injured. Plaintiff responded that his knee hurt. However, Plaintiff stated he

did not need an ambulance.  (Hudson Aff. at ¶¶ 11-12.)  At no time did Plaintiff request an ambulance or medical treatment.  Id. at ¶ 18.

Jailer Hudson called in over the radio to report he had been in an accident.  (Hudson Aff. at ¶ 13.)  Eventually, Sheriff Sutton, Deputy Dale Grimes, and Alabama State Trooper Willie White arrived at the scene.  (Hudson Aff. at ¶ 14; Sutton Aff. at ¶¶ 8-10.)  Trooper White determined that Mr. Howell was at fault in the accident.  (Sutton Aff. at ¶ 10-11; MVA rep. at pp. 1-2.)

There was nothing in Jailer Hudson's history prior to this accident to indicate that he was a bad driver.  (Sutton Aff. at ¶ 15; Moss Aff. at ¶ 13.)  After the accident, pursuant to policy, Jailer Hudson provided breath and urine samples for a drug and alcohol screening.  Both tests came out negative for the presence of drugs or alcohol.  (Hudson Aff. at 21.)

Both Plaintiff and Inmate Robinson were transported by another vehicle back to the Coffee County Jail.  (Hudson Aff. at ¶ 19; Moss Aff. at ¶ 7.)  Administrator Moss questioned both inmates about their condition.  The inmates responded that they were sore.  (Moss Aff. at ¶ 8.)  As a result, both inmates were sent to the jail doctor as a precaution.  Id.  After his return from the doctor, Plaintiff was laughing and joking.  (Hudson Aff. at ¶ 25.)  Plaintiff's biggest concern was that the damage suffered by the county truck would prevent him from going out on the work detail.  Id. at ¶ 26.

**B.    Plaintiff's Medical Treatment**

It is the policy of the Coffee County Jail that inmates receive necessary medical care.  (Moss Aff. at ¶ 11.)  It would be a violation of policy for anyone to deny an inmate necessary medical care.  Id.  As set forth below, Plaintiff received all necessary medical care – and then some – as a result of the extremely minor injuries he acquired in the accident.

As just stated, Plaintiff was originally transported to the jail doctor on the date of the

4

accident to ensure that they had not suffered any injuries.  (Moss Aff. at ¶ 8; Exhibit F, Inmate Records, Coffee County Jail Patient Record dated 3/9/07.)  Plaintiff reported to Dr. Joseph D. Meloni that he had pain in his back, neck, right wrist and right knee.  (Coffee County Jail Patient Record dated 3/9/07.)  Dr. Meloni's impression was that Plaintiff had contusions on his upper and lower extremities and a back sprain.  Id.  He prescribed an ace bandage for Plaintiff's right wrist and right knee, ice packs, and ibuprofen.  Id.

Plaintiff was subsequently seen by Dr. Meloni eleven days later.  This time, Plaintiff complained of painful swelling in his right knee and right wrist.  He said the pain had become constant since the accident.  Dr. Meloni's impression was that Plaintiff had an **old** ununited fracture of his right wrist and a giant cell tumor in his right knee.  Dr. Meloni prescribed naproxen.  (Exhibit G, Inmate Records, Coffee County Jail Patient Record dated 3/20/07.)

The next day, Plaintiff was taken to see Dr. Patrick W. Lett of Southern Bone and Joint Specialists.  (Exhibit H, Dictation of Plaintiff's 3/21/07 visit with Dr. Patrick W. Lett, "Lett dictation," at p. 1.)  Again, Plaintiff's chief complaint was pain in his right wrist and right knee. Id.  Plaintiff reported a history of right knee surgery in 2002.  Id.  Dr. Lett had x-rays made of Plaintiff's right knee and right wrist.  Id. at p. 2.  Plaintiff was found to have **preexisting** degenerative joint disease in the right knee along with a benign bone cyst.  Id.  The right wrist x-ray revealed no evidence of a new fracture.  Id.  Plaintiff did, however, have another old injury (a fracture) and arthritis.  Id.

Dr. Lett's assessment of Plaintiff included four conditions: (1) Right wrist sprain "in a patient with preexisting arthritis and previous trauma"; (2) right knee contusion "in a patient with preexisting arthritis; (3) benign appearing bone cyst; and (4) lower lumbar spin strain.  (Lett dictation at p. 2.)  Dr. Lett also noted:

> The patient seems to essentially have some bumps and bruises.  I see no evidence
> of permanent injury.  I certainly do not see a fracture.  I think he has a simple

5

knee contusion and a wrist sprain.  I am anticipating that in another couple of weeks, this should improve.  I would not anticipate any permanent disability.  **He does, however, have preexisting problems**, which may cause him difficulties in the future, specifically arthritis at both wrist and knee locations.  In addition, he does have the benign appearing cyst of the right tibia, although this appears to be benign.  I would recommend a follow up x-ray in six months or if he has any increasing symptoms.  **I do not think this is related to his current accident at all**.

Id. at p. 3 (emphasis added).  Dr. Lett recommended that Plaintiff return to "essentially normal activities," but restricted him from heavy lifting or prolonged standing for six weeks.  Id.

Plaintiff has also received significant medical treatment and medications both before and after the accident that is at the heart of this lawsuit.  While not particularly relevant to Plaintiff's alleged injuries suffered in the March 9, 2007 accident, the records of Plaintiff's medical care at the jail do show the practice of the jail with respect to providing inmates in general, and Plaintiff in particular, with necessary medical care.  Accordingly, the remainder of Plaintiff's jail medical records is attached hereto as Exhibit I.

C.    **Plaintiff's Access to the Courts/Tampering with Mail**

It is the policy of the Coffee County Jail that incoming inmate mail is screened for contraband.  (Moss Aff. at ¶ 15).  Jail Administrator Moss had no knowledge of or personal involvement in the alleged tampering with Plaintiff's incoming mail.  (Moss Aff. at ¶ 18).  When Administrator Moss personally received the letter from the postal service that Plaintiff alleges was tampered with, the return address had already been "blacked out" and the letter had been stamped "Unsolicited Mail Return to Sender."   Administrator Moss opened the letter to determine the identity of the intended recipient.  (Moss Aff. at ¶ 19).  A second letter arrived with the same markings, but the address was not fully marked out, and Administrator Moss was able to determine that the letter had been sent from the law firm of Cochran, Cherry, & Givens.  After contacting the firm, Administrator Moss was advised that it was the firm's standard procedure to mark unsolicited mail in such a way.  (Moss Aff. at ¶ 21).  Both envelopes were

6

returned to Plaintiff.  (Moss Aff. at ¶ 22.)

The correspondence from the Court was opened and screened to ensure no contraband was inside, but was returned to Plaintiff unread.  (Moss Aff. at ¶¶ 23-24).  All personal mail is screened by jail officials for contraband, including official correspondence from a court, because even envelopes that appear to be official can be easily produced by anyone and have no inherent indicia of authenticity.  (Moss Aff. at ¶ 25).

II.    LAW

A.    All official capacity federal claims by Plaintiff against the Defendants must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against the Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Any claims against the Defendants in

their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

**B.**     **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  Plaintiff in this case has not utilized an administrative remedy available to him.  Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Coffee County is a state officer and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.  There is absolutely no evidence that Plaintiff has filed a claim with the Board of Adjustment.  As a result of Plaintiff's failure to exhaust this remedy, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

**C.**     **Alternatively, these Defendants are entitled to summary judgment based on absolute immunity and qualified immunity.**

Plaintiff's claims are barred on two additional immunity grounds.  First, these Defendants are absolutely immune to the Plaintiff's state law claim under Article I, § 14 of the Alabama Constitution of 1901 in both their official and individual capacities.  Second, in their individual capacities, these Defendants are entitled to qualified immunity to Plaintiff's federal claims.

**1.    These Defendants are entitled to absolute immunity to Plaintiff's state law negligence claim.**

These Defendants are absolutely immune to Plaintiff's claims for money damages under Article I, § 14 of the Alabama Constitution of 1901.  Article I, § 14 of the Alabama Constitution of 1901 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity."  This section grants the State and its agencies an "absolute" immunity from suit in any court.  Ex parte Mobile County Dep't of Human Res., 815 So. 2d 527, 530 (Ala. 2001).  Section 14 immunity bars "almost every conceivable type of suit."  Hutchinson v. Bd. of Trustees of Univ. of Ala., 256 So. 2d 281, 283 (Ala. 1971).  Section 14 immunity is "nearly impregnable."  Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002).

By virtue of his position, Sheriff Sutton is an executive branch constitutional officer of the State of Alabama.  See Article V, § 112 of the Alabama Constitution of 1901; see also McMillian v. Monroe County, 520 U.S. 781, 793 (1997) (holding that an Alabama sheriff acts for the state and not his county when carrying out law enforcement duties); Carr v. City of Florence, 916 F.2d 1521, 1525-26 (11th Cir. 1990).  Therefore, a suit against him in his official capacity is a suit against the State of Alabama.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Similarly, because Administrator Moss acts for the Sheriff, he is also a state official.  Lancaster, 116 F.3d at 1431.

As executive branch, constitutional officers of the State, these Defendants are immune from suit under Article I, § 14 of the Alabama Constitution of 1901.  This section immunizes them from **all** state law claims, including constitutional claims, even though they are sued in their individual capacities.  Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1986) (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Lancaster, 116 F.3d at 1431 (holding sheriff and jailers were entitled to sovereign immunity); Parker v. Amerson, 519 So. 2d

442, 445 (1987) (holding the Sheriff immune from suit although sued "individually, and as Sheriff"); Ex parte Purvis, 689 So. 2d 794, 796 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity).

There are, however, limited exceptions to this immunity. An Alabama sheriff is immune from suit:

> except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

Parker, 519 So. 2d at 443. Accordingly, even in situations where sheriffs and their employees are sued for negligence or bad faith, the only exceptions to sovereign immunity allowed by the Alabama Supreme Court under Art. 1, § 14 of the Alabama Constitution of 1901, are to *enjoin* their conduct. Alexander v. Hatfield, 652 So. 2d 1142, 1143 (Ala. 1994). With only these narrow exceptions, Alabama sheriffs and their deputies are immune from suit. Ex parte Purvis, 689 So. 2d at 796; Ex parte Blankenship, 893 So.2d 303, 305 (Ala. 2004).

Slightly over a year ago, the Alabama Supreme Court again affirmed that sheriffs and deputies enjoy absolute immunity to state law money damages claims. Ex parte Davis, 930 So. 2d 497, 501 (Ala. 2005). In Davis, the Conecuh County Circuit Court refused to grant a Conecuh County deputy's motion to dismiss state law money damages claims. 930 So. 2d at 499. Plaintiff's claims against the deputy included false imprisonment, assault and battery, outrage, wantonness, negligence, trespass, and conversion. Id. Granting the deputy's petition for a writ of mandamus and instructing the circuit court to grant the motion to dismiss, the Alabama Supreme Court held that "an action against a sheriff – or a deputy sheriff – for damages arising out of the performance of his duties is essentially a suit against the state" and thereby

barred under Article I, § 14 of the Alabama Constitution of 1901.  Id. at 501 (internal quotations and citations omitted).

Here, Plaintiff has alleged that at all times relevant he was an inmate in the Coffee County Jail.  He has alleged that the actions taken by Sheriff Sutton and Administrator Moss were taken in their capacities as Sheriff and Administrator.  It is only in those capacities that either man had any authority or reason to supervise Plaintiff or control his movements in any way.  It was only in their respective capacities that these men had any authority to supervise the driver of the vehicle in which Plaintiff was riding at the time of the accident.  Plaintiff has specifically requested money damages.  Accordingly, as these Defendants are being sued for actions taken in the line and scope of their duties and Plaintiff seeks money damages for his negligence claim, that claim is barred by Article I, § 14 of the Alabama Constitution of 1901.

> **2.      These Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

These Defendants were acting within their discretionary authority as the Sheriff of Coffee County or the Jail Administrator of the Coffee County Jail during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether Plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  As set forth previously, the Amended Complaint appears to state three federal claims.  First, Plaintiff asserts that these Defendants failed to protect him.

Second, Plaintiff alleges that these Defendants denied him proper medical care. Finally, Plaintiff asserts that these Defendants tampered with his legal mail. Plaintiff has failed to establish that the Defendants' conduct violated any federally protected right.

### a. Neither Sheriff Sutton nor Jail Administrator Moss violated Plaintiff's federally protected rights.

### i. Plaintiff's Failure to Protect Claim

There are no facts to support Plaintiff's failure to protect claim. As set forth in the facts, the minor injuries suffered by Plaintiff were the result of a motor vehicle accident. In the accident, Jailer Hudson did all he could do to avoid the accident by pulling the truck he was driving to the far side of the road and coming to a stop. As Trooper White noted, the accident was entirely the fault of the other driver, Mr. Howell, and Jailer Hudson was in no way at fault. Moreover, there is no evidence that Jailer Hudson was a poor driver. Furthermore, even if Jailer Hudson was a poor driver, Plaintiff has presented no evidence that Sheriff Sutton or Administrator Moss had knowledge of this fact.

The facts alleged cannot support a failure to protect claim because, the Fourteenth Amendment imposes no obligation on Defendants to protect inmates from harm caused by private actors, even where a "special relationship" exists, when Defendants exercised all reasonable care and due diligence to avoid the accident. See DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199 [] (1989) (Noting that, as to the duty owed by the State to persons in the custody of the State, "the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others."); Jones v. Phyfer, 761 F.2d 642, 646 (11th Cir. 1985) (noting that where a special relationship exists between plaintiffs and defendants, defendants owe those plaintiffs "a special duty to use reasonable care to protect them.") (emphasis added); Wright v. City of Ozark, 715 F.2d 1513, 1516 (11th Cir. 1983)

("[A]lthough police officers owe a <u>general duty of care</u> to the public at large, they owe no duty to any particular member of the public, absent a special relationship. <u>South v. Maryland</u>, 59 U.S. (18 How.) 396, 15 L. Ed. 433 (1856); <u>see</u> Note, <u>Police Liability for Negligent Failure to Prevent Crime</u>, 94 Harv. L. Rev. 821, 822-828 (1981)").

Here, the driver of the pickup truck that collided into the truck carrying Plaintiff was undoubtedly a private actor, and Plaintiff does not allege otherwise. Defendants were under no extraordinary obligation to protect Plaintiff from the acts of a private actor and cannot be held liable under these circumstances. Under no conceivable interpretation of the evidence could Sheriff Sutton or Administrator Moss fail be deemed to have failed to protect Plaintiff under the facts in this case. Plaintiff has also contended that the road Jailer Hudson used on the day of the accident was somehow inherently dangerous. There is nothing in the record to suggest that other accidents had occurred on this particular road, or that Defendants were aware of prior accidents, if they had occurred.

### ii.    Plaintiff's Deliberate Indifference Claim

Even as to Plaintiff's second claim, there are no facts to support a claim against the Defendants for their failure to provide Plaintiff proper medical care. In order to prevail under 42 U.S.C. § 1983 on this claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a "serious" medical condition, such that the Defendants' conduct constitutes an Eighth Amendment violation. <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'") (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-104 (1976)). In <u>Estelle</u>, the Supreme Court stated:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a

> valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. <u>It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment</u>.

429 U.S. at 105-06 (emphasis added). <u>See also</u>, <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, Plaintiff has not shown that he had a serious medical condition. Immediately after the accident, Plaintiff told Jailer Hudson <u>only</u> that his knee hurt, and he did not request an ambulance or medical treatment. However, immediately upon return from the accident, Plaintiff was taken to see a doctor, Dr. Meloni, who concluded that Plaintiff had contusions on his upper and lower extremities as well as a back sprain,[3] and he prescribed an ace bandage, ice packs, and ibuprofen. This was no "serious medical condition." Furthermore, Plaintiff was taken twice to the prison doctor and once to Dr. Lett, a bone specialist, to treat the injuries he suffered as a result of the accident. Such attention to Plaintiff's injuries cannot be reasonably construed as indifference that offends the "evolving standards of decency" in violation of the Eighth Amendment.

An inmate does not have a right to a **specific** kind of treatment. <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; **how [a municipality] obtains**

---

[3] Because the evaluations of both Dr. Meloni and Dr. Lett, a bone specialist, indicate that the arthritis, the bone cyst, and the ununited fracture were all preexisting conditions and not a result of the accident, those conditions should not be considered a part of the injuries suffered by Plaintiff as a result of the accident. In any event, as the attached medical records clearly show, the Plaintiff received significant medical treatment—even for his pre-existing conditions.

**such treatment is not a federal constitutional question**.") (emphasis added).  Additionally, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience.  They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  In Williams v. Limestone County, 198 Fed. App'x. 893 (11th Cir. 2006), the Eleventh Circuit had addressed in an unpublished opinion the issue of whether an inmate may maintain a medical claim under the auspices of § 1983 against prison officials with no medical background.  In Williams, the Eleventh Circuit held that a Sheriff was not liable for failure to train his employees in emergency medical procedures.  In so holding, the Court noted:

> [W]e cannot say, on this record, that "the need for more or different training [was] obvious," such that by failing to ensure jail personnel were trained in emergency medical procedures, Sheriff Blakely disregarded a substantial risk that the jail staff would be deliberately indifferent to inmates' medical needs ….
>
> [T]here is no indication from the record that Sheriff Blakely had notice his policies, training procedures, or supervision were "likely to result in the violation of a constitutional right." ….

> [S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. <u>See, e.g.</u>, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir.1993); <u>White v. Farrier</u>, 849 F.2d 322, 327 (8th Cir.1988). In this case, Sheriff Blakely promulgated general procedures for dealing with emergency situations, which procedures relied primarily on the medical expertise Naphcare was obligated by contract to provide …. "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391, [] (1997). <u>See also</u> <u>Adams v. Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995). Williams [the plaintiff], as the district court concluded, thus failed to meet his burden on summary judgment of establishing that Sheriff Blakely's failure to train jail personnel amounted to deliberate indifference to Williams' serious medical condition.

198 Fed. Appx. at 897-898.

The Eighth Circuit has also addressed whether a Sheriff's may be held liable for claims of deliberate indifference to a medical condition when medical treatment is provided. In <u>Meloy v. Bachmeier</u>, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[4] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 <u>citing</u>, <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995). Further, the <u>Meloy</u> court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." <u>Id.</u> <u>citing</u>, <u>Zentmyer v. Kendall County</u>, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

---

[4] The medical director was a trained and licensed nurse. 302 F.3d at 846.

In the instant case, the evidence shows that Plaintiff was treated by Dr. Meloni, a medical doctor and Dr. Lett, a bone specialist, for all his medical problems. The Defendants, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of these medical doctors.

### iii. Plaintiff's Access to Courts Claim

Finally, the record fails to support Plaintiff's claim that Defendants tampered with his legal mail. Although the Eleventh Circuit has not addressed the constitutional implications of opening an inmate's incoming legal mail outside the presence of the inmate, the Supreme Court of the United States has determined that prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. Bounds v. Smith, 430 U.S. 817, 825 (1977). However, to state a claim for denial of access to the courts, the Supreme Court has required an inmate to demonstrate the existence of an "actual injury" affecting his effort to pursue a nonfrivolous legal claim. Lewis v. Casey, 518 U.S. 343, 349 (1996) ("We agree that the success of respondents' systemic challenge was dependent on their ability to show widespread actual injury, and that the court's failure to identify anything more than isolated instances of actual injury renders its finding of a systemic Bounds violation invalid."). Additionally, interference with legal mail must have been an "ongoing activity," rather than an isolated incident. Plaintiff must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir.2003).

Here, Plaintiff initially asserted that someone at the Jail redacted the address on an envelope he sent to an attorney's office. He now admits that he has no evidence that a jailer redacted the address. (Plaintiff's Complaint, ¶ 10.)[5] Instead, Plaintiff asserts that the envelope containing the

---

[5] Plaintiff further asserts that when he questioned a non-party jailer, the jailer was "nasty" and "indignant" while informing him that the person to whom he sent the mail did not want to hear from him. (Doc. 12 ¶ 2.) Clearly, speaking to an inmate in a harsh manner does not infringe on the inmate's constitutional rights – even if the jailer

Magistrate Judge's Report and Recommendation was open when he received it.   (Plaintiff's Amended Complaint, ¶ 10.)  Here, Plaintiff has failed to allege any "actual injury" suffered as a result of Administrator Moss screening Plaintiff's incoming mail from the Court and returning it to Plaintiff unread.   He merely alleges that "his letter from Judge Susan Russ Walker was opened, read, and therefore tampered with without his knowledge or permission."  (Amended Complaint, ¶ 3.)  Neither does Plaintiff allege any conduct by Sheriff Sutton or Administrator Moss that constituted a pattern and practice of interfering with Plaintiff's incoming legal mail that could be construed as an "ongoing activity."   Even when interpreted in a light most favorable to Plaintiff, the record cannot support Plaintiff's claims against Sheriff Sutton and Administrator Moss for interference with Plaintiff's mail.

Furthermore, the Supreme Court's decisions in Thornburgh v. Abott, 490 U.S. 401 (1989) and Turner v. Safely, 482 U.S. 78 (1987) support the conclusion that even if Administrator Moss had opened a piece of Plaintiff's legal mail outside Plaintiff's presence, he did not violate any of Plaintiff's constitutional rights.   Supreme Court precedent that preceded Thornburgh and Turner has been construed by some Courts to require that incoming legal mail be opened in the presence of the inmate.   See Taylor v. Sterrett, 532 F.2d 462, 475 (5th Cir. 1979) (holding that an "inmate's right of access to the courts supports the portion of the district court's order requiring that incoming prisoner mail from courts … be opened only in the presence of the inmate.").   However, Thornburgh and Turner have abrogated the portions of prior Supreme Court caselaw that supported a constitutional requirement that incoming legal mail be opened in the presence of the inmate.

---

was a party to this action.  See Lee v. Alabama Dept. of Corrections, ___ F. Supp. ___, ___, 2007 WL 687409, *1 (M.D. Ala. 2007) ("Threatening, derogatory or abusive comments made by a correctional officer to an inmate do not rise to the level of a constitutional violation.  McFadden v. Lucas, 713 F.2d 143 (5th Cir. 1983); see also Johnson v. Glick, 481 F.2d 1028 (2nd Cir.1973).").

In recognizing an inmate's right to have his incoming legal mail opened in his presence, pre-Thornburgh and Turner, Courts relied upon Procunier v. Martinez, 416 U.S. 396 (1974), and Wolff v. McDonald, 418 U.S. 539 (1974), to the extent that those cases recognized that opening an inmate's legal mail implicated the First Amendment. See, e.g., Sterrett, 532 F.2d at 565-66. These Courts concluded that, under the First Amendment, prison regulations on incoming inmate mail must comply with the two-prong test for constitutionality: "First, prison authorities 'must strongly show some substantial and controlling interest which requires the subordination or limitation' of a prisoner's First Amendment rights and 'which justifies their infringement' …. Second, those officials must demonstrate that legitimate government goals are achieved by the least restrictive, alternative means." Sterrett, 532 F.2d at 479 (emphasis added). Although these Courts recognized "[t]he danger presented by this [incoming] mail is that physical contraband will enter the jail," under the least-restrictive-means prong, that danger could be alleviated by opening all incoming mail in the inmate's presence. See Sterrett, 532 F.2d at 480 ("Physical contraband, such as weapons, metal files, or drugs, can ordinarily be detected by manual manipulation of envelopes, by scanning with fluoroscopes and metal detectors, or by inspection in the inmate's presence.") (emphasis added).

In Thornburgh v. Abott, 490 U.S. 401 (1989) and Turner v. Safely, 482 U.S. 78 (1987), the United States Supreme Court abrogated the least-restrictive-means prong insofar as it applied to cases involving prison regulations on incoming inmate mail. It did so expressly in Turner, where the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89 (emphasis added). In Thornburgh, the Court recognized that the standard it set forth in Turner overruled the least-restrictive-means prong it set forth in Martinez.

> In [Turner] we recognize that it might have been possible to apply a
> reasonableness standard to all incoming materials without overruling Martinez:

we instead could have made clear that Martinez does not uniformly require the application of a "least restrictive alternative" analysis. We choose not to go that route, however, for we prefer the express flexibility of the Turner reasonableness standard. We adopt the Turner standard in this case with confidence that, as petitioners here have asserted, "a reasonableness standard is not toothless."

490 U.S. at 414. In so holding, the Supreme Court expressly abrogated Martinez and Wolff, insofar as they applied the least-restrictive-means prong of the First Amendment constitutionality test to prison regulations on incoming inmate mail.

Overruling it's prior adherence to the Supreme Court's application of the First Amendment's least-restrictive-means prong to prison regulations on incoming inmate mail, the Fifth Circuit recognized this abrogation in Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993). In Brewer, the Court noted that "Sterrett's requirement of the 'least restrictive means' and a 'substantial or important governmental interest' in the context of prison regulation of legal mail appears to have been modified. In Thornburgh v. Abbott, [citation omitted], the Supreme Court overturned Martinez's holding regarding incoming mail …." 3 F.3d at 823 (emphasis original). Accordingly, in Brewer the Fifth Circuit held that "the violation of the prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of the prisoner's constitutional rights." 3 F.3d at 825 (emphasis added). The Fifth Circuit's revision of the constitutional standard it applies to prison regulation of incoming legal mail in light of Thornburgh and Turner illustrates the impact those Supreme Court's abrogation of Martinez and Wolff have had on the constitutional analysis of prison regulations on incoming inmate mail.

> **b.      Neither the caselaw of the 11th Circuit nor that of the United States Supreme Court placed Sheriff Sutton and Jail Administrator Moss on notice that their conduct would violate Plaintiff's "clearly established" federal rights.**

Even if Plaintiff had successfully stated a constitutional violation, he must prove that the state of the law provided the Defendants "fair warning" that their conduct would violate

Plaintiff's "clearly established" federal rights.  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).  In determining whether the conduct of the Defendants was clearly established as violating Plaintiff's constitutional rights, the reviewing court must examine the state of the law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose," here, the Alabama Supreme Court.  Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck v. City of Coral Springs, 354 F.3d 1307, 1318 (11th Cir. 2003), 354 F.3d at 1318 (quoting 28 F.3d at 1149).

### i.    Failure to Protect

With regard to Plaintiff's failure to protect claim, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff or a jail administrator is liable under 42 U.S.C. § 1983 for injury resulting to an inmate in an automobile accident that was entirely the fault of a third party not under the supervision or control of the Sheriff or jail administrator.  A failure to protect claim is a variation of a deliberate indifference claim that implicates the Eighth Amendment. As the Supreme Court stated in Farmer v. Brennan, 511 U.S. 825 (1994):

> In addition, prison officials who actually knew of a substantial risk to inmate
> health or safety may be found free from liability if they responded reasonably to

the risk, even if the harm ultimately was not averted.  A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," Helling[ v. McKinney,] supra, [509 U.S. 29,] at 33 … [(1993)]; see also Washington v. Harper, 494 U.S. [210], at 225 … [(1990)]; Hudson v. Palmer, 468 U.S. [517], at 526-27, … [(1984)], a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions," Spain v. Procunier, 600 F.2d 189, 193 (CA9 1979) (Kennedy, J.); see also Bell v. Wolfish, 441 U.S. 520, 547-48 … (1979).

511 U.S. at 844-45.

However, as noted above, a duty to protect an inmate for Eighth Amendment violations under the Fourteenth Amendment does not extend to protecting Plaintiff from harm caused by a private actor when Defendants exercised all reasonable care and due diligence to avoid the accident.  See, e.g., DeShaney, 489 U.S. at 199.  Here, the driver of the pickup truck that collided into the truck carrying Plaintiff was undoubtedly a private actor, and Plaintiff does not allege otherwise.  The caselaw of this Circuit does not establish that Defendants had an obligation to protect Plaintiff from the acts of a private actor and would not have provided Defendants notice that their failure to protect Plaintiff from harm caused by a private party violated Plaintiff's constitutional rights.  As noted above, there is nothing in the record to suggest that other accidents had occurred on this particular road, or that Defendants were aware of prior accidents, if they had occurred.  Nor is there any evidence in the record to indicate that Jailer Hudson was a bad driver or was operating the vehicle under the influence of alcohol or drugs.  Therefore, Sheriff Sutton and Administrator Moss cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

### ii.    Deliberate Indifference

Neither has the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court held that a Sheriff or a jail administrator is liable under 42 U.S.C. § 1983 for deliberate indifference to an inmate's medical needs when the injuries were not serious and were treated by doctors on three different occasions.  As noted above, the Eleventh Circuit has

recognized a cause of action for deliberate indifference, where an inmate can establish that the "deprivation alleged must be, objectively, 'sufficiently serious' and must 'implicate[] the Eighth Amendment.'" However, no cases in this Circuit have held a Sheriff or Jail Administrator liable for deliberate indifference where an inmate has received medical treatment on multiple occasions for injuries that were not serious. Therefore, Sheriff Sutton and Administrator Moss cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

### iii.    Access to Courts

As to Plaintiff's claims for interference with his mail, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a sheriff and a jail administrator may be held liable for opening a single piece of incoming legal mail. Although the Fifth Circuit's decision in Sterrett is binding on the Eleventh Circuit, see Bonner v. City of Prichard, 661 F.2d 1206, 1210 (11th Cir. 1981) ("The decisions of the former Fifth Circuit, adopted as precedent by the Eleventh Circuit, will, of course, be subject to the power of the Eleventh Circuit sitting en banc to overrule any such decision."), the Eleventh Circuit has not had the occasion to apply the Fifth Circuit's principles in Sterrett to a case involving the screening of incoming inmate mail outside the presence of the inmate, nor has the Eleventh Circuit had the opportunity to evaluate the vitality of the rule in Sterrett in light of the Supreme Court's holdings in Thornburgh and Turner. In light of the Fifth Circuit's abrogation of Sterrett in Brewer, it is unlikely that any Court in the Eleventh Circuit will apply the standards enunciated in Sterrett to a case involving prison regulation of incoming inmate mail. Therefore, Sheriff Sutton and Administrator Moss cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

> c.    **The text of the constitutional provisions that Plaintiff alleges were violated do not on their face prohibit the Defendants' conduct.**

The Eleventh Circuit has recognized an alternate method for establishing that the Defendants had notice that their conduct was unlawful.  Accordingly, even where Plaintiff cannot demonstrate that the caselaw provides the Defendants notice that their conduct violates his constitutional rights, as is the case here, he can establish that the Defendants still had "fair warning" of the constitutional deficiencies of their conduct from the text of the constitutional provision in question.  In such a case, Plaintiff must either demonstrate that the pertinent federal statute or federal constitutional provision is specific enough on its face to prohibit the Defendants' conduct as unconstitutional, even in the total absence of caselaw.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  To establish this case as an "obvious clarity" case, Plaintiff must show that "the words of the pertinent federal statute or federal constitutional provision" establishing the federal right allegedly violated are "specific enough to establish clearly the law applicable to particular conduct" such that "case law is not needed to establish that the conduct cannot be lawful."  Vinyard, 311 F.3d at 1350.

Neither the text of the Eighth Amendment, nor the text of the First Amendment, nor the text of the Fourteenth Amendment on its face, prohibits the conduct of Sheriff Sutton and Administrator Moss in this case as unconstitutional.  Even if Plaintiff had alleged conduct that violated his constitutional rights, neither the relevant bodies of caselaw nor the text of the relevant constitutional provisions would have put Sheriff Sutton and Administrator Moss on notice that their conduct would have violated Plaintiff's constitutional rights.

**D.    Plaintiff has failed to allege personal involvement as required by 42 U.S.C. § 1983.**

In order to establish a constitutional violation for conduct under § 1983 Plaintiff must allege personal involvement on behalf of the Defendants.  The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the Defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the Defendants, a policy established by the Defendants resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

Plaintiff has failed to allege that either Sheriff Sutton or Administrator Moss were in any way personally involved in the allegations surrounding Plaintiff's Failure to protect claim and his deliberate indifference claim.  Plaintiff has offered no allegation demonstrating that these named Defendants were in any way involved in the conduct that Plaintiff alleges is unconstitutional.  There are absolutely no facts in the record to show that Defendants personally participated in the circumstances surrounding Plaintiff's claims, nor does Plaintiff allege specifically how these Defendants violated his constitutional rights.

The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

25

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, all Plaintiff's claims are due to be dismissed.

Plaintiff's Complaint as amended contains no allegations demonstrating that these Defendants were in any way involved in the actions he claims were constitutionally infirm. Consequently, Plaintiff's § 1983 claim is based upon nothing more than respondeat superior, the Complaint fails to state a claim for which relief may be granted against these Defendants.

### E.    There is no *respondeat superior* liability under 42 U.S.C. § 1983.

To the extent that Plaintiff's claims against these Defendants are an attempt to hold them liable under a *respondeat superior* theory, they must fail. Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, ***subjects, or causes to be subjected***, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.) The language of the statute requires that there be a direct causal link between Plaintiff and the actions of a putative defendant. Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute.

The United States Supreme Court addressed this exact issue and adopted this holding nearly 30 years ago. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978). In Monell, the Court cited § 1983 and held, "a municipality cannot be held liable under § 1983 on a

<u>respondeat superior</u> theory." 436 U.S. at 691. Accordingly, as both the explicit text of § 1983 and the opinions of the United States Supreme Court forbid vicarious liability, Plaintiff's <u>respondeat superior</u> claims fail.

These Defendants are entitled to qualified immunity on each of Plaintiff's claims. First, to the extent Plaintiff's Amended Complaint makes out a proper supervisory claim against these Defendants, neither Sheriff Sutton nor Administrator Moss violated Plaintiff's federally protected rights. Second, even if Plaintiff could demonstrate a violation of his rights, no clearly established law gave these Defendants "fair warning" that their conduct were illegal.

Based on the foregoing, it is clear that the Defendants have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided these Defendants with fair warning that their conduct was unlawful. Therefore, these Defendants are entitled to qualified immunity.

### F.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. <u>Greason v. Kemp</u>, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. <u>See Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A.

Miller, Federal Practice and Procedure § 2529, p. 299.[6]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

These Defendants deny each and every allegation made by Plaintiff, Anthony Richards, in the Amended Complaint.  These Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

The Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 15th day of June, 2007.

**s/Joseph L. Hubbard, Jr.**
GARY L. WILLFORD, JR., Bar Number: WIL198
JOSEPH L. HUBBARD, JR., Bar Number HUB015
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  jhubbard@webbeley.com

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 15th day of June, 2007, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Anthony Richards #243996
Easterling Correctional Facility
200 Wallace Drive
Clio, AL  36017

**s/Joseph L. Hubbard, Jr.**
OF COUNSEL

# Exhibit A
**Inmate Records of Anthony Richards**

Coffee County Jail
Dave Sutton Sheriff
Richard Moss Administrator



INTAKE SHEET

Date: _0-17-07_

Time: _____

Status: ST __✓__ FED _____ CITY _____ COUNTY_____ COFFEE CO: Ent Div / Elba Div

Name: _Richards_____ _Anthony_____ _____ SS#: _369_-_80_-_06 09_
       Last             First           Middle

Address: _308 Windmill Dr_ _Brundidge_____ _Al_ _____
          Street           City                State     Zip Code

DOB: _01_/_09_/_1963_ POB: _Cincinati____ _____ _OH_ _____
                          City        County     State    Country

Age: _44_ Race: _B_ Sex: _M_ Hair: _Blk_ Eyes: _Bro_ Weight: _200_ Height: _5-11_

License or ID #: _____

Arresting Agency: _CCSO____ Arresting Officer: _Shelton____ Location of Arrest: _Pike Co-_

Type of Arrest: Warrant _____ Call _____ View _____

| Offense | Mis | Fel | Bond |
|---|---|---|---|
| 1-- Receiving Stolen Property 2nd | | ✓ | |
| 2-- Reckless endangerment | | | |
| 3-- | | | |
| 4-- | | | |

HOLDS: _____    INTAKE SHEET NUMBER

_____

_____

This form completed by: _____

Booked by: _____ Searched Y/N   Photo Y/N   FPs Y/N   Green Card  Y/N

Comments: _Charges called in by Dupty Shelton_____

_____

# Exhibit B
**Affidavit of Dallas Hudson, Jr.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANTHONY RICHARDS, SR.   )
             )
  Plaintiff,      )
             )
v.            )  Civil Action No. 1:07-cv-337-MEF-TFM
             )
DAVE SUTTON, SHERIFF, et al., )
             )
  Defendants.    )

## AFFIDAVIT OF DALLAS HUDSON, JR.

STATE OF ALABAMA   )
            )
COUNTY OF COFFEE   )

  **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Dallas Hudson, Jr., who being known to me and being by me first duly sworn on oath deposes and says as follows:

  1.  My name is Dallas Hudson, Jr. I am over the age of nineteen and competent to make this affidavit.

  2.  I am a corrections officer with the Coffee County Sheriff's Department. I have served in that capacity for four years.

  3.  I read Inmate Council's complaints in this matter and have personal knowledge of the facts underlying Inmate Council's claims.

  4.  On March 9, 2007, I was transporting the Plaintiff along inmate Jarvis Robinson to a work detail in a 1998 Chevrolet club cab truck owned by Coffee County.

  5.  Inmate Robinson was in the passenger-side front seat and the Plaintiff was seated immediately behind Inmate Robinson.

6. As we were traveling at approximately 15 miles per hour on County Road 232 (a dirt road), we were met by a Toyota truck driven by Anthony Howell traveling in the opposite direction as it topped a hill. The Toyota truck was traveling approximately 50 miles per hour.

7. I immediately pulled to the far side of the road and stopped.

8. Mr. Howell apparently applied his breaks and his Toyota began to slide on the loose gravel and came onto my side of the road.

9. The Toyota's left front quarter panel contacted the left front quarter panel of my truck.

10. The Toyota was traveling approximately ten to fifteen miles per hour when it struck my truck.

11. I asked if everyone was OK. Inmate Robinson said he was fine, but the Plaintiff said his knee was hurting.

12. I asked the Plaintiff if he needed an ambulance and he said "no".

13. I called the dispatch and asked them to send an Alabama trooper.

14. After some time, Sheriff Dave Sutton, Deputy Dale Grimes, and Trooper Willie White arrived at the scene.

15. Mr. Howell did not have liability insurance.

16. Mr. Howell did have a warrant for his arrest, but the issuing jurisdiction would not pick him up.

17. Trooper White completed his investigation and prepared an accident report. A true and correct copy of the report is attached to the Defendants' Special Report.

18. At no time did the Plaintiff ever request an ambulance or medical attention.

19. Another vehicle was dispatched to the accident scene to pick up both inmates. They were taken to the jail.

20.     I was taken to the New Brockton Police Department and took a breath test. The test showed that I did not have alcohol in my system.

21.     I was then taken to Dr. Cook's office where I provided another breath sample and a urine sample for a drug screen. Both tests were negative for the presence of alcohol and drugs.

22.     I suffered no injury in the collision whatsoever.

23.     After I left Dr. Cook's office, I went back to the Coffee County Jail to turn in the paper work I had been given.

24.     When I arrived at the jail, Inmates Robinson and Richards were just arriving from being taken to the doctor. It is my understanding that they were both taken to the doctor as a precaution.

25.     The Plaintiff was laughing and joking at the time.

26.     The biggest concern the Plaintiff appeared to have was how long it would take the truck to be repaired. He was concerned that there might not be a way to take him to the job site to work and he would be left at the jail.

27.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the _23_ day of May, 2007.

_Dallas Hudson, Jr._
Dallas Hudson, Jr.


**SWORN TO** and **SUBSCRIBED** before me this _23_ day of May, 2007.

_Donna A. Pennington_
NOTARY PUBLIC

My Commission Expires: _March 4, 2008_

3

# Exhibit C
**Affidavit of Richard B. Moss**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ANTHONY RICHARDS, SR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-337-MEF-TFM |
| | ) | |
| DAVE SUTTON, SHERIFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF RICHARD B. MOSS

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF COFFEE | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Richard B. Moss, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Richard B. Moss. I am over the age of nineteen and competent to make this affidavit.

2. I the Jail Administrator of the Coffee County Jail. I have served in this position for over five months. Prior to becoming the Jail Administrator, I was a police officer with the Elba, Alabama Police Department for two years. Prior to that I served as a police officer with the Town of River Falls, Alabama Police Department for approximately five years. I have a total of seven and one-half years of law enforcement experience.

3. I read the Plaintiff's complaints in this matter and have personal knowledge of the facts underlying the Plaintiff's claims.

1

4.    On March 9, 2007, one of my corrections officers, Dallas Hudson, was involved in a motor vehicle accident while transporting two inmates to a work detail. One of the inmates was the Plaintiff, Anthony Richards.

5.    I was notified of the accident by Sheriff Dave Sutton when he called me at my office.

6.    I remained at the jail.

7.    The Plaintiff and the other inmate in the accident were transported by a different vehicle back to the jail.

8.    I spoke to both inmates and asked if they needed medical attention. They said they were sore, but did not need medical care. Nonetheless, I had them transported to the jail doctor as a precaution.

9.    Also as a precaution, I directed that Dallas Hudson be taken for alcohol and drug testing. The results of the test were negative – there was no alcohol or drugs in Corrections officer Hudson's system.

10.    The Plaintiff returned from the doctor with a light duty order and some medication. He also received follow up appointments.

11.    It is the policy of the Coffee County Jail that inmates receive all necessary medical attention. It would be a violation of the policies of the Coffee County Jail to deprive an inmate of necessary medicines or medical treatment.

12.    The Plaintiff received all treatment ordered by the physicians who treated him.

13.    Corrections Officer Hudson was hired during the previous administration. I had no information prior to the accident on March 9, 2007, that would indicate in any way that he was a poor driver.

2

14. Furthermore, the route taken by Corrections Hudson was the most direct route to the work site and had been used for as long as I have been Jail Administrator without incident.

15. It is also the policy of the Coffee County Jail that incoming inmate mail be screened for contraband. The purpose of this policy is to ensure the safety and security of the jail, the jail staff and the inmates.

16. I have personally intercepted contraband coming into the jail through the mails on several occasions.

17. Specifically regarding the Plaintiff, as I understand it, he alleges that an outgoing letter to an attorney and an incoming letter from the Court was tampered with.

18. I have no knowledge of what happened to the Plaintiff's outgoing letter to the attorney. I did not interfere in any way in the process of the letter leaving the jail. I did not make any of the markings that are on the envelope that was attached to the Plaintiff's Complaint.

19. I personally received the letter when it came back from the postal service and it already had the markings on it. As the address was lined through, and the envelope was stamped "Unsolicited Mail Return to Sender", I opened the letter to determine the identity of the intended recipient. I looked at the letter enough to see "Dear Shannon" and concluded that it was a local attorney named Shannon Clark.

20. I contacted Ms. Clark to ask if the Plaintiff was a client of hers and she informed me he was not.

21. A second envelope later came in with the same markings. The address was not as thoroughly marked out and I was able to determine that the letter had been sent to the law firm of Cochran, Cherry & Givens. I called the law firm and was advised that the markings were something that her firm did with unsolicited mail.

22. Both envelopes were returned to the Plaintiff.

3

23. With respect to the correspondence from the Court referenced in the Plaintiff's Amended Complaint, it too was screened for contraband in accordance with the policy of the jail.

24. I personally opened the envelope, ensured that there was no contraband inside, and gave it, unread, to a corrections officer for delivery to the Plaintiff. To be clear, I did not read the materials inside the envelope.

25. I know that it takes little effort to have envelopes printed so that mail can appear to come from anyone – including a federal court. Consequently, I screen mail that appears to come from a court for contraband.

26. Attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and medical records. These records are prepared and kept in the regular course of business of the Coffee County Jail.

27. I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the 25th day of May, 2007.

Richard B. Moss

**SWORN TO** and **SUBSCRIBED** before me this 25th day of May, 2007.

NOTARY PUBLIC

My Commission Expires: March 4, 2008

4

# Exhibit D
**Affidavit of David T. Sutton**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY RICHARDS, SR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:07-cv-337-MEF-TFM** |
| | ) | |
| **DAVE SUTTON, SHERIFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF DAVID T. SUTTON

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COFFEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared David T. Sutton, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is David T. Sutton. I am over the age of nineteen and competent to make this affidavit.

2. I was certified in Jail Management by the Texas Commission on Law Enforcement in 1974.

3. I was certified as a law enforcement officer by the Texas Commission on Law Enforcement in 1970. I was certified again by the Alabama Peace Officers Standards and Training Commission in 1996.

4. I am the duly elected Sheriff of Coffee County, Alabama. I have served in that capacity for approximately five months. I have been a law enforcement officer in Texas and Alabama for ten years. I also served for one year as the Taylor County, Texas Jail

Administrator. I have a total of 11 years actively working in law enforcement since my original certification.

5.     I also retired after 24 years from the United States Army as a medical service aviator with the rank of lieutenant colonel.

6.     I read the Plaintiff's complaints in this matter and have personal knowledge of the facts underlying the Plaintiff's claims.

7.     On March 9, 2007, one of my jailers, Dallas Hudson, was involved in a motor vehicle accident while transporting to inmates to a work detail. One of the inmates was the Plaintiff, Anthony Richards.

8.     I became aware of the accident when I heard the dispatcher make a radio call regarding the collision.

9.     I went to the scene of the accident. The accident occurred on County Road 232 in Coffee County.

10.    When I arrived, Trooper White of the Alabama State Troopers was already on the scene. The truck driven by my jailer was in a ditch on the right side of the road. The other vehicle, a Toyota pick up truck, was still in the roadway. Efforts were underway to tow the other vehicle from the scene.

11.    I spoke with Trooper White. He informed me that the Toyota had come over the hill traveling too fast. The vehicle driven by my jailer had gone as far over as he could, but the Toyota slid into him.

12.    The Plaintiff and the other inmate were already gone by the time I arrived.

13.    Because of the damage to our truck, I directed that a wrecker be called to come and get it.

14.    The Toyota was not insured.

2

15.    Prior to this accident I was unaware of anything in Jailer Hudson's history that would indicate in any way that he was a poor driver.

16.    Attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and medical records. These records are prepared and kept in the regular course of business of the Coffee County Jail.

17.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the 24th day of May, 2007.

_____
David T. Sutton

**SWORN TO** and **SUBSCRIBED** before me this 24th day of May, 2007.

_____
NOTARY PUBLIC

My Commission Expires: March 4, 2008

3

# Exhibit E
**Alabama Uniform Traffic Accident Report**

AST-27
REV. 1/91

**ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT**

DPS Accident No. _____

Shaded Areas To Be Used By Data Processing Only    Sheet 1 of 2 Sheet(s)    Microfilm No. _____    Local Case No. _____

**LOCATION AND TIME**

| Da 03 | Mo 09 | Year 2007 | Time 8:00 PM | Day of Week M T W TH | County 19 | City | Rural X |
|---|---|---|---|---|---|---|---|

Highway Classification: I—Interstate  F—Federal  S—State  C—County  M—Municipal  P—Private, Prop.  O—Other

On Street, Road or Highway: Co. Rd. 232
At Intersection of or Between (Node 1): Al-125
And (Node 2): Co. Rd. 228

| Street or Road Code 1070 | Node Code 7591 | Node Code 7585 | Feet (Miles) 310 | From Node 1 or 2 (Circle One) 2 |
|---|---|---|---|---|

Intersection Related: 1-Node 1  2-Node 2  X-Not Int. Related
Mile Post
Control Access
Hwy. Loc.: 1 - Main Rd   3 - Interchange   5 - Exit Ramp
2 - Frontage Rd   4 - Entrance Ramp   6 - N/A

Prime Contr. Circms. 27
Prime Contr. Unit №: 1

1st Harmful Event: 20    Event Location    Distance to Fixed Object: NA FT.

**UNIT NO 1**

DRIVER
Driver Full Name: Anthony Leon Howell   Street Address: P.O. Box 52   City and State: Jack, Al   ZIP 36346   Telephone No. 334 897-3135

DOB: 02 17 1982   Race W   Sex M   DL State Al   Driver License No. 6880756
DL Class D   DL Status R   List Restrictions Not Complied With   CDL Status N   Residence Less Than 25 Miles No

Place of Employment: Custom Fiber Glass   Liability Insurance Co. None   Social Security No.

Driver Condition: 1 - No Defect  2 - Apparently Asleep  3 - Fatigued  4 - Ill  8 - Other  9 - Unknown
Sobriety   Officer's Opinion   Alcohol: Yes No Unk   Drugs: Yes No Unk
Type Test Given: No Test  1 - Blood Test  2 - Breath Test  3 - Urine Test  4 - Unable to Administer  5 - Refused Test   Test Results NA

Maneuver: 08   Travel Road Name: Co Rd 232   Road Code 1070   Travel Direction: E S W A-Not on Rd U-Unk   Other Contr. Circumstance 97   Prime Harm Event   Event Loc

**COM VEH**

Veh Year 1991   Make Toy   Model NA   Body T   V.I.N. JT4RNDIP9L7018187   License Plate No. 1B3184K   State Al   Year 2007
Owner's Name: same   Street or R.F.D.   City   State   ZIP

**VEHICLE UNIT 1**

Type: (2) Pick Up
Usage: 1 Personal
Hazardous Cargo: 1 None
Attachment: 1 None
Contributing Defect: 1 None
Circle areas Damaged On Diagram

Speed Limit 35 MPH   Est. Speed 40 MPH   Citation/Offense Charged: None
Damage Severity: 1 - None Visible  2 - Not Disabled   6 - Disabled
Vehicle Towed Away? To Where: Home
Occupants in Unit
Enter Point of Initial Impact

Vehicle Towed By Whom: Owner

**UNIT NO 2**

DRIVER
Driver Full Name: Dallas Hudson Jr.   Street Address: 18632 Walding Rd   City and State: Opp, Al   ZIP 36467   Telephone No. 334 493-9098

DOB: 03 27 1965   Race W   Sex M   DL State Al   Driver License No. 4735616
DL Class DM   DL Status C   List Restrictions Not Complied With   CDL Status N   Residence Less Than 25 Miles

Place of Employment: Coffee Co Sheriff Dept   Liability Insurance Co. Meadow Brook   Social Security No. NA

Driver Condition: 1 No Defect  3 - Fatigued  8 - Other
Sobriety   Officer's Opinion   Alcohol: Yes No Unk   Drugs: Yes No Unk
Type Test Given: No Test  1 - Blood Test  2 - Breath Test  3 - Urine Test  4 - Unable to Administer  5 - Refused Test   Test Results NA

Maneuver/Action: 08   Travel Road Name: Co. Rd. 232   Road Code 1070   Travel Direction: E S W A-Not on Rd U-Unk   Other Contr. Circumstance 97   Prime Harm Event 20   Event Loc

**COM VEH**

Veh Year 1998   Make Chev   Model C/K   Body   V.I.N. 1GBHC33F3WF054527   License Tag Number 42737 CO   State Al   Year NA
Owner's Name: Coffee Co. Hwy. Dept.   Street or R.F.D. Co. Complex   City New Brockton   State Al   ZIP 36351

**VEHICLE OR PEDESTRIAN UNIT 2**

Type: 4 Van
Usage: 3 Personal
Hazardous Cargo: 1 None
Attachment: 1 None
Contributing Defect: 1 None
Circle areas Damaged On Diagram

Speed Limit 35 MPH   Est. Speed 15 MPH   Citation/Offense Charged: None
Damage Severity: 1 - None Visible  2 - Not Disabled   6 - Disabled
Vehicle Towed Away? To Where: New Brockton, Al.
Occupants in Unit 3
Enter Point of Initial Impact 8

Vehicle Towed By Whom: alley's (Owner)

**CODES**

Contributing Circumstances
01 - Improper Passing
02 - Improper Lane Change/Usage
03 - Improper Turn/To Fast
04 - Following Too Close
05 - Disregard Stop Sign
06 - Over Speed Limit
07 - Avoid Object/Person/Veh
08 - Unseen Object/Person/Veh
09 - Improper Backing
10 - Stop Traffic Control
11 - Improper/No Signal
12 - Fail to Heed Stop/Signal

13 - Improper Driving-Environ
14 - Vision Obscured
15 - Detective Equipment
16 - DUI
17 - Fatigued
18 - Under Influence
19 - Improper Load/Veh
20 - Improper Attachment
21 - Fail to Yield Right-of-Way
22 - Driver Condition
23 - Wrong Side of Road
24 - Veh Pushed/Towed by Veh

25 - Veh Pushed by Person
26 - Off Road
27 - Pass on Hill
28 - Pass on 1-Way Street
29 - Load Shift
30 - Parts/Cargo from Veh
90 - Ped Violation
97 - No Contributing Cir.
98 - Ped Interference
99 - Ped Struck/Killed Influence

Driver Maneuver
01 - Go Straight Ahead
02 - Go Right Turn
03 - Pass on 1-Way Street
04 - Ran off Road
05 - Go Straight—Left Turn Lane
06 - Go Straight—Right Turn Lane
07 - Change Lanes—Left
08 - Change Lanes—Right
09 - Merge—Left
10 - Merge—Right

13 - Right Turn
14 - Left Turn
15 - U-Turn
16 - Start from Park
17 - Start in Traffic
18 - Slowing/Stopping
19 - Stopped in Traffic
20 - Avoid Object in Road
21 - Backing
90 - No Ped/Prop
99 - Unknown

63 - Ped/Cyc Ride Against
64 - Ped/Cyc Ride in Bike Path
65 - Ped/Cyc Ride in Bike Path
66 - Ped/Cyc Ride in Roadway
70 - Enter Parked Position
71 - Parked—Legally
72 - Parked—Illegally
73 - Backing
90 - Pushed by Vehicle
91 - No Ped
99 - Unknown

Pedestrian Action
01 - Cross/Enter—Intersection
02 - Cross/Enter—Other
03 - Walk with Traffic
04 - Walk Against Traffic
05 - Stand in Roadway
06 - Get on/off Vehicle
07 - Push/Work on Vehicle
08 - Playing in Road
99 - Unknown

Event Loc
1 - Off Road
2 - Off Roadway
3 - Median
4 - Driveway
5 - Private Road/Property
6 - In Intersection

APR 2007

## SEATING

**Other Involved Unit**

Unit 1

12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstance /
Codes Not Applicable

Other Involved
Safety Equipment

**Other Involved Unit**

Unit 2

12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstance /
Codes Not Applicable

Other Involved
Safety Equipment

**CODES** (SAFETY EQUIPMENT)

01 - None Installed
95 - Not Applicable
99 - Unknown (Any Type)
Lap Belt Only
11 - Fastened
12 - Not Fastened
Lap/Shoulder Harness
21 - Lap Only Used
22 - Neither Used
23 - Shoulder Only Used
24 - Both Used
Motorcycle Helmet
31 - None Used
32 - Used
Air Bags
41 - Deployed, Belts Used
42 - Not Deployed, Belts Used
43 - Deployed, Belts Not Used
44 - Not Deployed, Belts Not Used
Child Restraints
81 - Child Restraint Used
82 - Other Restraint Used
83 - None Used
Pedal Cycle/Pedestrian
91 - Contrasting Clothing
92 - Non-contrasting Clothing

## VICTIMS

| Name | Address | Unit No | Seat Pos | Injury Type | Age | Sex | Ejec. from | First Aid By |
|---|---|---|---|---|---|---|---|---|
| Anthony Richards | Coffee Jail New Brockton | 2 | 6 | C | 44 | M | N | N |
| Taken To  NA | Taken By  NA | | | | | | | |
| Name | Address | | | | | | | |
| Taken To | Taken By | | | | | | | |

**CODES**

**Injury Type**
K - Killed
B - Bruise/Abrasion/Swelling
A - Visible or Carried from Scene
C - Not Visible—Has Pain/Faint

**Ejected**
N - Not
P - Partially
T - Trapped
U - Unknown
A - Not Applicable

**First Aid By**
A - Ambulance Attended
D - Doctor
M - Paramedic
O - Other
P - Police
U - Unknown
N - None

## NARRATIVE AND DIAGRAM



Co. Rd. 232

Not to scale

**Officer's Opinion of What Happened:** Vehicle #1 was southbound on Co. Rd. 232. Veh #2 was North bound Co. Rd. 232. Veh. #1 was going too fast for road conditions went into skid and slid into Veh #2. Veh. #2 was in ditch when it was struck.

## ROADWAY ENVIRONMENT

**Unit 1**

| Contributing Road Defects | Surface Construction | Condition | Accident In Or Related To Road Construction Zone? | Material In Roadway (Contributing) | Material Source | Character |
|---|---|---|---|---|---|---|
| 0 - None | 1 - Asphalt | 0 - Dry | | 0 - None | 1 - Not Applicable | 1 - Straight—Level |
| 1 - Shoulders Low | 2 - Concrete | 2 - Wet | Yes    Yes | 5 - Gravel | 2 - Natural Environment | 6 - Curve—Down Grade |
| 2 - Shoulders High | 3 - Brick | 3 - Icy | | 2 - Rocks    6 - Oil/Petrol | 3 - Dropped From Vehicle | 2 - Straight—Down Grade    7 - Curve—Up Grade |
| 3 - Holes, Bumps, Etc. | 6 - Unpaved | 4 - Snowy/Slushy | No    No | 3 - Trees/Limbs    8 - Other | 4 - Already in Road, But | 3 - Straight—Up Grade    8 - Curve—Hillcrest |
| 8 - Other | 8 - Other | 5 - Muddy | | 4 - Dirt | Fell From Vehicle | 4 - Straight—Hillcrest |
| **Unit 2** | | 8 - Other | | | 8 - Other | 5 - Curve—Level |
| 2 | | | | | 9 - Unknown | |

**Vision Obscured By:**
97 - Not Obscured
1 - Buildings
2 - Signboard
3 - Trees, Crops, Bushes
4 - Blowing Snow/Sand
5 - Hillcrest
6 - Curve in Road
7 - Fog
8 - Parked Vehicle
9 - Moving Vehicle(s)
10 - Blinded by Sunlight
11 - Fire/Smoke
12 - Dust
13 - Blinded by Headlights
14 - Embankment
15 - Rain on Windshield
16 - Snow on Windshield
98 - Other
99 - Unknown

**Traffic Control**
1 - Police Officer
2 - R.R. Crossing Gates
3 - R.R. Flashing Lights
4 - R.R. Cross Bucks/Pave. Mark.
5 - Pedestrian Control
6 - Traffic Signal
7 - Flashing Beacon
8 - Stop Sign
9 - Yield Sign
10 - Lane Control Device
11 - Flagger
12 - No Passing Zone
98 - Other

**Traffic Control Functioning**    Yes  Yes    No  No    N/A

**DOT Railroad Crossing No.**  NA

**Opposing Lanes Separated By:**
0 - None
1 - Paved Surface
2 - Unpaved Surface
3 - Broken Painted Line
4 - Solid Painted Line
5 - Concrete Barrier
6 - Metal Guard Rail
7 - Fence
98 - Other Barrier

**Trafficway Lanes**
1 - One Lane
2 - Two Lanes
3 - Three Lanes
4 - Four Lanes
5 - Five Lanes
6 - Six Lanes or More

**One-Way Street**
Yes    Yes
No    No

## INVESTIGATION

**Light**
1 - Daylight
2 - Dawn
3 - Dusk
4 - Darkness—Road Not Lit
5 - Darkness—Road Lit

**Weather**
1 - Clear
2 - Cloudy
3 - Rain
4 - Snow
5 - Sleet/Hail
6 - Crosswind
7 - Fog

**Locale**
1 - Open Country
2 - Residential
3 - Shop'g or Business
4 - Ind. or Industrial
5 - School
6 - Playground
8 - Other

**Non-Vehicular Property Damage**
1 - None Visible    3 - Moderate
2 - Light    4 - Severe

**Description:** NA

**Property Damage Description**

**Owner:**

**Address:**

| Time Police Notified | Time Police Arrived | Time EMS Arrived | Name of Photographer |
|---|---|---|---|
| 8:10 PM MT | 8:15 PM MT | NA AM PM MT | NA |

| Witness Full Name | Address | | Telephone |
|---|---|---|---|
| NA | | | |
| Witness Full Name | Address | | Telephone |
| NA | | | |

| Name of Investigating Officer | Officer ID | Agency ORI | Supervisor Reviewed |
|---|---|---|---|
| Willie J. White | 728 | AL AST3 80 0 | GW |
| Name of Other Investigating Officer(s) at Scene | Officer ID | Agency ORI | |

The data on this report reflects my best knowledge, opinion and belief covering the accident, but no warrant as to the factual accuracy thereof.

**Signature of Investigating Officer** Willie J. White    **Date** MAR. 9, 2007

# Alabama Uniform Traffic Accident Report
## Truck/Bus Supplemental Sheet

Unit No. _2_
(same as on main report)

Sheet _2_ of _2_ Sheets

## General Instructions

*Complete this form for each qualifying vehicle ONLY if the accident meets BOTH of the following criteria:*
1. The accident involved a qualifying vehicle (truck with 6 or more tires or Haz/Mat placard, or a bus designed to carry 16 or more, including driver) and;
2. The accident resulted in at least one of the following:  A. one or more fatalities  B. one or more persons injured and taken from the scene for immediate medical attention, or  C. one or more involved vehicles had to be towed from the scene as a result of disabling damage or had to receive assistance to leave.

## Screening Information

*Number of Qualifying Vehicles:*

Trucks with 6 or more tires or Haz/Mat placard _1_

Buses designed to carry 16 or more (including driver) _____

Number of vehicles towed from scene due to damage or provided assistance _2_

Number of Persons:

Sustaining fatal injuries _0_

Transported for immediate medical treatment _0_

## Vehicle Information

*Gross Vehicle Weight Rating (GVWR)*

A. Truck, tractor or bus _10,000_
B. Trailer or trailers (total) _N/A_
Total GVWR for unit (A+B) _10,000_

Total number of axles _2_

*Hazardous Material Involvement*

Did vehicle have a Haz/Mat placard ____ Yes _✓_ No

If Yes, include following information from placard
  A. Name or 4-digit number from diamond or box _N/A_
  B. The 1-digit number from bottom of diamond _N/A_
Was hazardous material released from THIS vehicle's cargo? ____ Yes _✓_ No

*Vehicle Configuration*  (circle one number)

1. Bus  ②. Single unit truck (2 axles/ 6 or more tires)  3. Single unit truck (3 or more axles)
4. Truck with trailer  5. Truck tractor only (bobtail)  6. Tractor with semi-trailer  7. Tractor with double trailers
8. Tractor with triple trailers  9. Unknown class heavy truck  0. Any other 4-tired vehicle

*Cargo Body Type*  (circle one number)

1. Bus  2. Van/enclosed box  3. Cargo tank  ④. Flatbed  5. Dump
6. Concrete mixer  7. Auto transporter  8. Garbage/ refuse  9. Other _____

## Motor Carrier Information

NOTE: If NOT a motor carrier, enter NONE under Carrier Name, 0 for None under Carrier Identification Numbers, and go to Sequence Of Events Section

Carrier Name _Coffee County Sheriff Dept._

Source (circle one number)  1. Vehicle side  2. Shipping papers  ③. Driver  4. Other

Carrier mailing address (Street or P.O. Box) _Coffee Co. Jail_

City, State, Zip _New Brockton, Al._

Carrier Identification Numbers  (_____ None = 0)

US DOT _____  ICC MC _____  STATE NO. _42737 Co._  STATE _Al._

## Sequence of Events

Note: for THIS vehicle - list up to four  Event #1 _10_  Event #2 _____  Event #3 _____  Event #4 _____

EVENT CODES

Non-Collision
1. Ran off road  2. Jackknife  3. Overturned (rollover)  4. Downhill runaway
5. Cargo loss or shift  6. Explosion or fire  7. Separation of units  8. Other non-collision

Collision With  9. Pedestrian  10. Non-parked vehicle  11. Parked vehicle  12. Train
13. Pedalcycle  14. Animal  15. Fixed object  16. Other object

| Signature of Reporting Officer | Officer ID | Reporting Police Agency ORI | Date | Time |
|---|---|---|---|---|
| | 728 | ALAST3800 | MAR. 9, 2001 | 8:00 PM MT |

## Alabama Uniform Traffic Accident Report
## Truck/Bus Supplemental Sheet

AST-34T
1/94

Unit No. 2
(same as on main report)

Sheet 2 of 2 Sheets

### General Instructions

Complete this form for each qualifying vehicle ONLY if the accident meets BOTH of the following criteria:

1. The accident involved a qualifying vehicle (truck with 6 or more tires or Haz/Mat placard, or a bus designed to carry 16 or more, including driver) and;
2. The accident resulted in at least one of the following:  A. one or more fatalities   B. one or more persons injured and taken from the scene for immediate medical attention, or C. one or more involved vehicles had to be towed from the scene as a result of disabling damage or had to receive assistance to leave.

### Screening Information

Number of Qualifying Vehicles:

Trucks with 6 or more tires or Haz/Mat placard ___1___

Buses designed to carry 16 or more (including driver) _____

Number of Persons:

Sustaining fatal injuries ___0___

Transported for immediate medical treatment ___0___

Number of vehicles towed from scene due to damage or provided assistance ___2___

### Vehicle Information

Gross Vehicle Weight Rating (GVWR)

A. Truck, tractor or bus ___10,000___
B. Trailer or trailers (total) ___N/A___
Total GVWR for unit (A+B) ___10,000___

Total number of axles ___2___

Hazardous Material Involvement

Did vehicle have a Haz/Mat placard ____ Yes ✓ No

If Yes, include following information from placard
A. Name or 4-digit number from diamond or box ___N/A___
B. The 1-digit number from bottom of diamond ___N/A___
Was hazardous material released from THIS vehicle's cargo? ____ Yes ✓ No

Vehicle Configuration    (circle one number)

1. Bus     ②. Single unit truck (2 axles/ 6 or more tires)     3. Single unit truck (3 or more axles)
4. Truck with trailer     5. Truck tractor only (bobtail)     6. Tractor with semi-trailer     7. Tractor with double trailers
8. Tractor with triple trailers     9. Unknown class heavy truck     0. Any other 4-tired vehicle

Cargo Body Type    (circle one number)

1. Bus     2. Van/enclosed box     3. Cargo tank     ④ Flatbed     5. Dump
6. Concrete mixer     7. Auto transporter     8. Garbage/ refuse     9. Other _____

### Motor Carrier Information

NOTE: If NOT a motor carrier, enter NONE under Carrier Name, 0 for None under Carrier Identification Numbers, and go to Sequence Of Events Section.

Carrier Name  Coffee County sheriff Dept.

Source (circle one number)    1. Vehicle side     2. Shipping papers     ③ Driver     4. Other

Carrier mailing address (Street or P.O. Box)  Coffe Co. Jail

City, State, Zip  New Brockton, Al.

APR - 5 2007

Carrier Identification Numbers    ( _____ None = 0)

US DOT _____     ICC MC _____     STATE NO. 42737 Co.     STATE  Al.

### Sequence of Events

Note: for THIS vehicle — list up to four     Event #1  10     Event #2 _____     Event #3 _____     Event #4 _____

EVENT CODES

Non-Collision    1. Ran off road     2. Jackknife     3. Overturned (rollover)     4. Downhill runaway
5. Cargo loss or shift     6. Explosion or fire     7. Separation of units     8. Other non-collision

Collision With    9. Pedestrian     10. Non-parked vehicle     11. Parked vehicle     12. Train
13. Pedalcycle     14. Animal     15. Fixed object     16. Other object

| Signature of Reporting Officer | Officer ID | Reporting Police Agency ORI | Date | Time | |
|---|---|---|---|---|---|
| | 779 | Al AST 7800 | Mar 5 2007 | 9:00 | PM / MT |

# Exhibit F

**Inmate Records, Coffee County Jail Patient Record dated 3/9/07**

# COFFEE COUNTY (ALA.) JAIL
## PATIENT RECORD

Name _Richards, Anthony_    Date _3-09-07_    Time _0900_   A.M. / P.M.

Address _CCJ_    Age _____    Sex _____

☑ County Prisoner    ☐ State Prisoner    ☐ Other _____

Complaint: _accident_

History of Complaint: _MVA — Back, Neck © wrist © elbow M.S._

Doctor Impression: _Contusions / upper and lower extremities. Bilk Brown_

_Doctor Signature_

Treatment: _Ace Bandage © wrist © elbow. Ice Packs to painful areas (as needed) 2 days. Elevate - Ibuprofen 200, (x 2 )_

Quality Printing Co.

# Exhibit G

**Inmate Records, Coffee County Jail Patient Record dated 3/20/07**

# COFFEE COUNTY (ALA.) JAIL
## *PATIENT RECORD*

Name Anthony Richards, Sr.   Date 03/20/07   Time 1:00   A.M. / *P.M.*

Address Complex 4   Age 44   Sex M
Coffee County Jail

☐ County Prisoner   ☐ State Prisoner   ☐ Other _____

Complaint: Painful Swelling of ® Knee, ® wrist

History of Complaint: Since recent MVA, pains have become constant.

Doctor Impression:
① Old Navicular (ununited) fracture ® wrist
② Giant cell tumor @ Knee.

~~Joe Tyson M.D~~
Doctor Signature

Treatment: R: Naproxen 500 (30)

Quality Printing Co.

LONGTIME INMATE

SSN: 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
dob: 01-19-1963

— Cpl. Marcy Childs
3/20/07

# Exhibit H
**Dictation of Plaintiff's 3/21/07 visit with Dr. Patrick W. Lett**

Startdoc

Richards,Anthony

01/09/1963

Lett MD,Patrick

03/21/2007

Chart Note

CHIEF COMPLAINT:

Right wrist and right knee pain.

HPI:

The patient is a 44-year-old male, who is apparently a prisoner at the local Coffee County jail. The patient states that he was involved in a motor vehicle accident on 3/9/07. He apparently was in the backseat of a police car, when there was an auto accident on Coffee Road 521. As a result, he says he injured his lower back, his right knee, and his right wrist thinking that it may have hit the back of the car seat. Most of the pain along the knee is anteriorly along the patellofemoral joint. It is worse with activity and better with rest. The back pain is mostly lower lumbar spine. No radiating features. No numbness, tingling, or weakness. The pain is worse with activity and better when lying in the fetal position. The wrist pain is more globalized dorsally. It is worse with activity and better with rest. No previous orthopedic evaluation in the past. Regarding treatment, he was seen at the Elba emergency room where x-rays were taken revealing no obvious fractures. By report, a CT scan was performed as well. He is here today for orthopedic evaluation and orthopedic referral. He is apparently still in jail.

PAST MEDICAL HISTORY:

Diabetes, sleep apnea.

PAST SURGICAL HISTORY:

Right knee surgery, likely arthroscopy in 2002.

CURRENT MEDICATIONS:

Glucotrol and Glipizide.

ALLERGIES:

No known drug allergies.

SOCIAL HISTORY:

The patient is married, smokes two packs a day, and denies alcohol.

REVIEW OF SYSTEMS:

No chest pain or shortness-of-breath. No unintended weight loss or weight gain. The remainder of the physical findings are outlined in the patient information data sheet.

PHYSICAL EXAMINATION:

On exam, the patient is a black male in no acute distress 5'11" and 209 pounds. Gait reveals he walks with an antalgic gait perhaps slightly favoring the right lower extremity. He is not using a gait aid. Back reveals no focal tenderness, no stepoffs. There is some vague tenderness perhaps in the lower lumbar spine region. Lumbar motion is mildly limited by discomfort. There is perhaps some paraspinal muscle tenderness but no focal masses or stepoff. Shoulder and elbow exam unremarkable. The right wrist reveals some vague tenderness along the dorsal aspect of his distal radius. He does have some limited motion, which appears to be chronic especially along the base of the thumb CMC joint and with deep wrist flexion and extension. Wrist motion is about 75% of normal.

NEUROLOGIC: Sensation appears to be intact in the L1-S1 dermatomes and C5 through T1 dermatomes. the right knee reveals some patellofemoral crepitus lacking 3 degrees from full extension. His extensor mechanism is intact. The knee is stable to varus and valgus stresses. There is perhaps a minor knee effusion but no obvious bleeding. There is some area of tenderness along the anterior aspect of the knee near the inferior pole of the patella. I see no abrasions and no obvious ecchymosis at this time.

VASCULAR: Palpable radial artery and dorsalis pedis pulses.

X-RAYS:

X-rays of the right knee (AP and lateral views) were reviewed. He has preexisting significant DJD with narrowing of the lateral compartment especially with marginal osteophyte formation but not quite bone on bone eburnation. There is a well defined cyst in the metaphysis and epiphysis of the right tibia. This has a well defined sclerotic border and appears to be a benign bone cyst. No fractures are noticed.

X-RAYS:

Outside x-rays of his wrist were reviewed personally. I see no evidence of fracture. He does, however, have significant posttraumatic arthritis involving the radial carpal joint. In addition, he has what appears to be an old fracture of the navicular with aseptic necrosis of the distal fragment.

ASSESSMENT:

1 - Right wrist sprain in a patient with preexisting arthritis and previous trauma.

2 – Right knee contusion in a patient with preexisting arthritis.

3 – Benign appearing bone cyst, right proximal tibia.

4 – Lower lumbar spine strain.

DISCUSSION:

https://sbjs.orthopad.net/cfinclude/lp.cfm?pagetoload=c:\data\patients\ri\ricant010963\Tran...  5/24/2007

The patient seems to essentially have some bumps and bruises. I see no evidence of permanent injury. I certainly do not see a fracture. I think he has a simple knee contusion and a wrist sprain. I am anticipating that in another couple of weeks, this should improve. I would not anticipate any permanent disability. He does, however, have preexisting problems, which may cause him difficulties in the future, specifically arthritis at both wrist and knee locations. In addition, he does have the benign appearing cyst of the right tibia, although this appears to be benign. I would recommend a follow up x-ray in six months or if he has any increasing symptoms. I do not think this is related to his current accident at all. At this point, I will see him back in six months with x-rays of his right tibia. He will contact me after he gets out of jail to arrange a follow-up at that time. I would, of course, be available if needed prior to then. In the meantime, I have given him a splint for his wrist and knee sleeve and placed him on Naproxen. I will let him return to essentially normal activities but will keep him from heavy lifting or prolonged standing for the next six weeks.

PWL/cp

# Exhibit I
**Inmate Medical File**

# COFFEE COUNTY (ALA.) JAIL
## PATIENT RECORD

Name _Richards, Anthony_   Date _3/21/2007_   Time _1330_   (A.M. / P.M.)

Address _CCJ_   Age _____   Sex _Male_

☑ County Prisoner   ☐ State Prisoner   ☐ Other

Complaint: _Knee_

History of Complaint: _Right Knee Pain_
_Right with pain_

Doctor Impression: _Of Right Knee contusion_   Treatment: _Knee Sleeve_
_Benign knee cyst_   _NSAIDS_
_wore x rays_
_in 6 months_ _No Heavy lifting_
_or prolonged standing_
_for 6 weeks_

_____
Doctor Signature

Quality Printing Co.

Joseph D. Meloni, M.D.

980 Drayton Avenue
Elba, Al 36323

Phone: 334-897-3800
Fax:    334-897-3804

# Out Patient Scheduling/Physician Referral Sheet

**PATIENT'S NAME** _Anthony Richards Sr._    **D.O.B.** 1/9/63

**SCHEDULED DATE** 3/20/07    **SCHEDULED TIME** 2:27 pm    **PHONE NUMBER** (334) 308-9797

**DIAGNOSIS** _Tumor or Proximal end R) Tibia_

**PHYSICIAN'S SIGNATURE** _Joseph Meloni, M.D._

## YOU ARE SCHEDULED FOR THE TESTS OR APPOINTMENTS CHECKED BELOW:

### RADIOLOGY

___ IVP
___ BARIUM SWALLOW
___ BARIUM ENEMA
___ BARIUM ENEMA W/AIR
___ CHEST PA
___ CHEST (PA & LAT)
___ SKULL
___ FACIAL BONES
___ FLAT & UPRIGHT (ACUTE ABD. SERIES)

___ LUMBAR SERIES
___ SINUS SERIES
___ UPPER GI
___ NASAL BONES
___ CERVICAL SPINE
___ THORACIC SPINE
___ K.U.B. (FLAT ABD)
___ OTHER _____

___ HAND    R - L
___ WRIST    R - L
___ FOREARM    R - L
___ ELBOW    R - L
___ HUMERUS    R - L
___ SHOULDER    R - L
___ HIP    R - L
___ FINGER or TOE    R - L _____ (SPECIFY DIGIT)
___ OTHER _____

___ CLAVICLE    R - L
___ FOOT    R - L
___ ANKLE    R - L
___ FT. & ANKLE    R - L
___ KNEE    R - L
___ FEMUR    R - L
___ PELVIS    R - L

NUCLEAR MEDICINE: _____
ULTRASOUND: _____
CT SCAN: _____
MAMMOGRAM: _____
MRI: _____
OTHER: _____

SPECIAL INSTRUCTIONS: _____

### RESPIRATORY CARE

**PULMONARY FUNCTION TESTING**

___ SIMPLE
___ COMPLETE
___ WITH DILATOR
___ WITHOUT DILATOR
___ OTHER _____

___ BRONCHOSCOPE
___ ABG
___ TREATMENT _____

### NEUROLOGICAL SERVICES

___ EEG
___ ROUTINE
___ SLEEP DEPRIVED
___ 24 HOUR AMBULATORY

___ ENG
___ BLINK REFLEX
___ CAROTID ULTRASOUND
___ OTHER: _____

___ EVOKED POTENTIAL
___ BAER
___ VEP
___ SSEP

___ EMG
___ NCV
___ TCD

### PHYSICIAN'S OFFICE

DR. _Kett_
DIAGNOSIS: _Tumor or Proximal end R) Tibia_
OFFICE LOCATION: _Enterprise Main Street_
APPOINTMENT DATE: 3/21/07    APPOINTMENT TIME: 1:30

### SURGICAL PROCEDURES

___ COLONSCOPY    ___ EGD

### CARDIOLOGY

___ EKG
___ HOLTER
___ EVENT MONITOR
___ 2-D ECHO
___ OTHER _____

___ GXT
___ GXT WITH THALLIUM
___ MUGA SCAN
___ 2-D COLOR DOPPLER

### OTHER INSTRUCTIONS

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

### PHYSICAL THERAPY

☐ PHYSICAL THERAPY
EVALUATE & TREAT

☐ PHYSICAL THERAPY
EVALUATE & TREAT

___ GAIT
___ TRANSFERS
___ ADL
___ EXERCISE
___ HAND THERAPY
___ TENS

___ BACK SCHOOL
___ ULTRASOUND
___ HOT PACKS
___ MASSAGE
___ SPLINT
___ COLD PACKS

___ CERVICAL TRACTION
___ LUMBAR TRACTION
___ ELEC. STIMULATION
___ WHIRLPOOL
___ WOUND CARE

SPECIAL INSTRUCTIONS: _____

WHITE - FILE COPY  YELLOW - PATIENT COPY

# COFFEE COUNTY (ALA.) JAIL
## PATIENT RECORD

Name _Anthony Richards_     Date _04-02-07._     Time _1510_ A.M. **P.M.**

Address _Coffee Co Jail_     Age _44_     Sex _M._

☑ **County Prisoner**     ☐ **State Prisoner**     ☐ **Other** _____

Complaint: _____

_____

History of Complaint: _Persistant Back pains_

---

Doctor Impression: _Thoracic Strain_
_Myalgia_

_____
Doctor Signature

Treatment: _Rx: Flexaril tabs. 10 mg_
_ONE T.I.D. prn Back_
_pains_

Quality Printing Co.

USM. 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
DOB 1-19-63
is A County Inmate in the
Coffee County Alabama- Jail

Marcy Childs, Shift Supervisor
4/2/07

NURSING HOME
987 DRAYTON STREET
ELBA, AL 36323
(334)897-2257

**OUTPATIENT PHYSICIAN ORDERS**

PATIENT NAME: _ANTHONY RICHARDS._    BIRTHDATE: _1-9-63_

DATE OF SERVICE: _4-2-07_    PHYSICIAN: _MELONI_

| Circle test(s) TEST | Circle Rationale(s) listed rationale(s) provided for convenience/not an exclusive list RATIONALE DIAGNOSIS WITH X NEEDS FURTHER CLARIFICATION I.E. RUQ ABD PAIN(789.01), IDDM(250.01) |
|---|---|
| CXR {71020,71010} | Chest Pain-786.5x/Cough-786.2/Croup-464.4/COPD-496/CHF-428.0/Syncope-780.2/Asthma-493.9X/FUO-780.6 Congestion-514/other |
| ABD/KUB{74000/74020} | Abd Pain-789.0x/GI Bleed-578.9/Ileus-560.1/Abd Trauma/other |
| IVP {74400} | Hematuria-599.7/Abd Pain-789.09/Urinary Obst 599.6/other |
| ABD US {76700} | Abd Pain-789.00-789.9/Ascites-789.5/Cirrhosis-571.5/Mass789.3/Calculus-592.x /Acute Renal Failure-584.x/ Trauma/other |
| Pelvic US {76856} | Abd Pain-789.09/PID-614.3/Pelvic Pain-625.9/Prostatitis-601.0/Mass-789.3x/Dysfunctional Uterine Bleed-626.8/ Dys.Uterine Bleed-626.8/Hematuria-599.7/Other |
| US of (          ) | Rationale |
| 2D Echo {93307-93320-93325} | Chest Pain-786.50/Cardiac Murmur-785.2/Syncope-780.2/CHF-428.0/Dyspnea-786.09/Cardiomegaly-429.3 Angina-413.9/Atrial Fib-427.31/other |
| Arterial Doppler {93925,93926,93930,93931} | *LIMB PAIN/EDEMA UNACCEPTABLE RATIONALE—Acceptable includes:* PVD-443.9/Aortic Aneurysm-441.9 Anuerysm {Extremity}-442.x/Arterial Emboli-444.0/Ulcer-707.x/Injury to Blood Vessel-903.x,904.x,999.2, |
| Venous Doppler {93970,93971} | Leg Pain729.5`Redness695.9`Swelling729.81 [Medicaid only accepts codes such as-DVT-453.9/Edema-782.3/ TP-451.9/Chest Pain-786.5x/V.Vein-454.9/Trauma~Injury |
| Carotid Doppler {93880} | Syncope-780.2/Vertigo-780.4/Ataxia-781.3/Paresthesia-782.0/Dysphasia-784.5/Bruit-785.9/CVA-436/TIA-435.9/ Intractable Migr-346.01~346.01~346.81 only/other |
| CT Head {w/0-70450 w-70460-70470} | Headache-784.0/Transient alteration awareness-780.02/Senile dementia-290.3/Amnesia-780.99/Convulsions-780. Febrile Convulsions-780.30/Syncope-780.2/TIA-435.9/CVA-436/Neoplasm-195.0/Skull Fx~Injury~Trauma~other |
| CT Chest(71275) | Chest Pain-786.50/Pleurisy-511.0/Abnormal CXR-793.1/Chest Trauma-959.1/other |
| CT Abd {w/o-74150 {w-74160-74170} | Abd Pain-789.0x/Mass-789.3x/Abn. weight loss-783.2/FUO-780.6/Hematuria-599.7/Inflammatory Dz (female)-614.x Enteritis~Colitis-555.0-558.9/Appendicitis-540.0-542/Abd Hernia (specified)550.00-553.9/Malignancies/other |
| CT of (          ) | Rationale |

**\*\*If injury or accidental injury document explanation of how injury or accident occurred\*\***

| | | | | |
|---|---|---|---|---|
| XR Skull | XR LS Spine | XR C Spine | (XR T Spine) | Trauma/Pain/FB/other |
| XR Pelvis | XR Hip R L | XR Humerus R L | XR Femur RL | Trauma/Pain/FB/other |
| XR Knee R L | XR Forearm R L | XR Tib/Fib R L | XR Wrist RL | Trauma/Pain/FB/other |
| XR Facial | XR Elbow R L | XR Ankle R L | | Trauma/pain/FB/other |
| XR Ankle R L | XR Hand R L | XR Foot R L | XR Other | Trauma/Pain/FB/other |

OTHER ORDERS/DIAGNOSIS: _Thoracic Strain_
_Myalgia_

Appointment Date: _____    Appointment Time: _____

Date-10/03    PHYSICIAN SIGNATURE: _____ DATE _4-2-07_

JOSEPH D.

980 Drayton Ave.
Elba, Alabama 36323        DBA# BM6911261

PATIENT'S NAME: Anthony Richards

DATE: 4.2.07

Rx

Flexeril 10g
#30.

. ī ⍯ 8 hrs prn Back pain

_____, M.D.
PRODUCT SELECTION PERMITTED
LABEL

_____, M.D.
DISPENSE AS WRITTEN
REFILL: 0 1 2 3 4 5 PRN

Anthony Richards
SSN. 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
DOB 1-19-63
is a County Inmate in the
Coffee County Alabama Jail

Marcy Childs, Shift Supervisor
4/2/07

**JOSEPH D. MELONE, M.D.**

980 Drayton Ave.
Elba, Alabama 36323          DBA# BM6911261

Phone 334-897-3800
Fax 334-897-3804

PATIENT'S NAME _Anthony Richards Jr._

℞                               DATE: _3-20-07_

Naproxen 500
#30.

+ BID ē meals.

_____, M.D.

PRODUCT SELECTION PERMITTED
(LABEL)

_____, M.D.
DISPENSE AS WRITTEN
REFILL: 0 ① 2 3 4 5 PRN

ANTHONY RICHARDS, JR. IS A Coffee County
Alabama Inmate

SSN: 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
dob: 01-19-1963

— Cpl. Marcy Childs

3/20/07

**JOSEPH D. MELONI, M.D.**

980 Drayton Ave.
Elba, Alabama 36323

DEA# BM6911261

Phone 334-897-3800
Fax 334-897-3804

PATIENT'S NAME _Anthony Richard Jr_

℞

DATE: _3-20-07_

Naproxen 500
"30"
+ B10 ē meals

_____ M.D.

PRODUCT SELECTION PERMITTED
LABEL

DISPENSE AS WRITTEN _____, M.D.
REFILL: 0 (1) 2 3 4 5 PRN

Giant cell

Doctor Signature

SSN: 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
dob: 01-19-1963

Cpl. W. Farcy Childs

3/20/07

| | | | | | FEDERAL: |
|---|---|---|---|---|---|
| **NAME:** Anthony Richards | | | | | |
| **MEDICATION:** Rifampin 300 mg | | | | ACA STANDARD FORM 2-2133 | STATE: |
| **R/X INSTRUCTIONS:** 1 cap 2 X daily | | | | MEDICATION SHEET | COUNTY: |
| Bottle | | | | CELLBLOCK 4 | CITY: |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 1-26 | 2007 | 1800 | 1 Cap | Anthony Richards | W.Ross | S.R. |
| 01-22 | 2007 | 0500 | 1 cap | Anthony Richards | W.Williams | CHM |
| 01-27 | 2007 | 1800 | 1 cap | Anthony Richards | RA.O | CHM |
| 01-28 | 2007 | 0700 | 1 cap | Anthony Richards | R.Ala | CHM |
| 01-28 | 2007 | 1800 | 1 cap | Anthony Richards | MR | CHM |
| 01-29 | 2007 | 0700 | 1 cap | Anthony Richards | W.Williams | CHM |
| 01-29 | 2007 | 1800 | 1 cap | Anthony Richards | | CHM |
| 01-30 | 2007 | 0500 | 1 cap | Anthony Richards | MR | MR |
| 01-30 | 2007 | 1800 | 1 cap | Anthony Richards | MR | MR |
| 01-31 | 2007 | 0500 | 1 cap | Anthony Richards | MR.H | MR |
| | 2007 | | | Out of medicine | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL 1/31/07

**NAME:** Anthony Richards

**MEDICATION:** Piroxicam 20MG

**AUX INSTRUCTIONS:** 1 Cap. 1 x daily

| | COFFEE COUNTY JAIL | FEDERAL: |
|---|---|---|
| | ACA STANDARD FORM 2-2133 | STATE: |
| | MEDICATION SHEET | COUNTY: |
| | CELLBLOCK  4 | CITY: |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 1-26 | 2007 | 1200 | 1 Cap. | anthony | S. Robert | S. R. |
| 1-27 | 2007 | 0500 | 1 cap | | Williams | AW |
| 01-28 | 2007 | 0700 | 1 cap. | | Bell | BMB |
| 01-29 | 2007 | 0500 | 1 cap | Anthony Richards | Williams | SW |
| 01-30 | 2007 | 0500 | 1 cap | | | |
| 1-31 | 2007 | 0500 | 1 cap. | | MPH | MH |
| 02-01 | 2007 | 0500 | 1 cap | anthony Richards | Williams | AW |
| 02-02 | 2007 | 0500 | 1 cap | | Williams | AW |
| 02-03 | 2007 | 0500 | 1 cap | | Williams | AW |
| 2-04 | 2007 | 0500 | 1 cap | | Williams | AW |
| 02-05 | 2007 | 0500 | 1 cap | | Williams | AW |
| 2-06 | 2007 | 0500 | 1 cap | | Williams | AW |
| 2-07 | 2007 | 0500 | 1 cap | Anthony Richards | Jane Doe | JF |
| 2-08 | 2007 | 0500 | 1 cap | Anthony Richards | Williams | AW |
| 02-08 | 2007 | 0500 | 1 cap | Anthony Richard | Williams | AW |
| 2-10 | 2007 | 0500 | 1 cap | Anthony Richard | Williams | AW |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

| | | COFFEE COUNTY JAIL | | FEDERAL: |
| NAME: Anthony Richards | | | | STATE: |
| MEDICATION: Glipizide 5mg | ACA STANDARD FORM 2-2133 | | | COUNTY: |
| RX INSTRUCTIONS: 1 Tab 1x daily | MEDICATION SHEET | | | CITY: |
| | | CELLBLOCK 4 | | |

| DATE | YR | TIME ISSUED | AMT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 1-26 | 2007 | 1200 | 1 Tab | anthony | S. Robert | S.R. |
| 01-27 | 2007 | 0800 | 1 tab | anthony Richards | U Williams | CHC |
| 01-28 | 2007 | 0700 | 1 tab | anthony Richards | R.W | CP |
| 01-29 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | |
| 01-30 | 2007 | 0500 | 1 tab | anthony richards | MPH | CFB |
| 01-31 | 2007 | 0500 | 1 tab | anthony richards | MPH | MS |
| 02-01 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | W |
| 02-02 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | W |
| 02-03 | 2007 | 0500 | 1 tab | anthony richards | W Williams | W |
| 02-04 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | Jee |
| 02-05 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | Jee |
| 02-06 | 2007 | 0500 | 1 tab | anthony richards | W William | FT |
| 2-07 | 2007 | 0500 | 1 tab | anthony richards | W Williams | FT |
| 2-08 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | W |
| 2-09 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | W |
| 2-10 | 2007 | 0500 | 1 tab | anthony richards | W Williams | W |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

COFFEE COUNTY JAIL

ACA STANDARD FORM 2-2133

MEDICATION SHEET

NAME: Anthony Richards

MEDICATION: Glipizide 5mg

R/X INSTRUCTIONS: 1 Tab 1X A day

FEDERAL:

STATE:

COUNTY:

CITY:

CELLBLOCK 4

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|------|-----|-------------|-------------|--------------------|-----------------------------|------------------|
| 2-11 | 2007 | 0500 | 1 Tab | Anthony Richard | Williams | hc |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |
|  | 2007 |  |  |  |  |  |

DATE IN FOR REFILL _____

DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

COFFEE COUNTY JAIL

MEDICATION SHEET

ACA STANDARD FORM 2-1133

| | |
|---|---|
| NAME: Anthony Richards | FEDERAL: |
| MEDICATION: Tramadol HCL 50 MG | STATE: |
| R/X INSTRUCTIONS: 2 Tabs 4X daily | COUNTY: |
| | CELLBLOCK 4 | CITY: |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-9 | 2007 | 1200 | 2 Tabs | Anthony Richards | S. Roberts | IHS |
| 2-9 | 2007 | 1800 | 2 Tabs | | Anne Owen | IHS |
| 2-9 | 2007 | 2200 | 2 Tabs | | Anne Owen | IHS |
| 2-10 | 2007 | 0500 | 2 Tabs | Anthony Richards | L.M. Williams | IHS |
| 2-10 | 2007 | 1200 | 2 Tabs | Anthony Richards | L.M. Williams | IHS |
| 2-10 | 2007 | 1800 | 2 Tabs | Anthony Richards | TQ Owen | IHS |
| 2-10 | 2007 | 2200 | 2 Tabs | Anthony Richards | A Owen | IHS |
| 2-11 | 2007 | 0500 | 2 Tabs | Anthony Richards | L.M. Williams | IHS |
| 2-11 | 2007 | 1200 | 2 Tabs | Anthony Richards | L.M. Williams | IHS |
| 2-11 | 2007 | 1800 | 2 Tabs | Anthony Richards | L.M. Williams | IHS |
| 2-11 | 2007 | 1800 | 2 Tabs | Anthony Richards | Anne Owen | IHS |
| 2-12 | 2007 | 2200 | 2 Tabs | Anthony Richards | M Owen | IHS |
| 2-12 | 2007 | 0500 | 2 Tabs | Anthony Richards | LWilliams | IHS |
| 2-12 | 2007 | 1200 | 2 Tabs | Anthony Richards | LWilliams | IHS |
| 2-12 | 2007 | 1800 | 2 Tabs | Anthony Richards | Owen | IHS |
| 2-12 | 2007 | 2200 | 2 Tabs | Anthony Richards | | IHS |
| 2-13 | 2007 | 0500 | 2 Tabs | Anthony Richards | LW | IHS |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

**COFFEE COUNTY JAIL**

**MEDICATION SHEET**  ACA STANDARD FORM 2-2133

NAME: Richards Anthony
MEDICATION: Tramadol Hcl 50mg
R/X INSTRUCTIONS: 2 - 4 X daily    IHS

FEDERAL: ___  STATE: ___  COUNTY: ___  CITY: ___
CELLBLOCK 4

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|------|----|----|----|----|----|----|
| 2-13 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 2-13 | 2007 | 1800 | 2 Tabs | Anthony Richards | JK | IHS |
| 2-13 | 2007 | 2200 | 2 Tabs | Anthony Richards | JK | IHS |
| 2-13 | 2007 | 0500 | 2 Tabs | Anthony Green | Green Dean | IHS |
| 2-14 | 2007 | 1200 | 2 Tabs | Anthony Richards | Moore | IHS |
| 2-14 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 2-14 | 2007 | 2200 | 2 Tabs | Anthony Richards | cole | IHS |
| 2-15 | 2007 | 0500 | 2 Tabs | Anthony Richards | Williams | IHS |
| 2-15 | 2007 | 1200 | 2 Tabs | Anthony Richards | M.B. | IHS |
| 2-15 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 2-15 | 2007 | 2200 | 2 Tabs | Anthony Richards | | IHS |
| 2-16 | 2007 | 0500 | 2 Tabs | Anthony Richards | Williams | IHS |
| 2-16 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 2-16 | 2007 | 1800 | 2 Tabs | Anthony Richards | S. Roberts | IHS |
| 2-16 | 2007 | 2200 | 2 Tabs | Anthony Richards | Clark | IHS |
| 2-17 | 2007 | 0500 | 2 Tabs | Anthony Richards | Williams | IHS |

DATE IN FOR REFILL ___    DATE REFILLED ___    DATE MED OUT w/NO REFILL ___

NAME: Anthony Richards

MEDICATION: Glipizde 5mg

R/X INSTRUCTIONS: 1 Tab 1X/day

| | | COFFEE COUNTY JAIL | | | FEDERAL: |
|---|---|---|---|---|---|
| | | ACA STANDARD FORM 2-2133 | | | STATE: |
| | | MEDICATION SHEET | | | COUNTY: |
| | | CELLBLOCK H | | | CITY: |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-15 | 2007 | 0500 | 1 Tab | | H Williams | IHS |
| 2-16 | 2007 | 0500 | 1 tab | | H Williams | IHS |
| 2-17 | 2007 | 0500 | 1 Tab | | H Williams | IHS |
| 2-18 | 2007 | 0500 | 1 Tab | | H Williams | IHS |
| 2-19 | 2007 | 0500 | 1 Tab | | H Williams | IHS |
| 2-20 | 2007 | 0500 | 1 Tab | | Lynette Dees | IHS |
| 2-21 | 2007 | 0500 | 1 Tab | | Lynette Dees | IHS |
| 2-22 | 2007 | 0500 | 1 Tab | | H Williams | IHS |
| 2-23 | 2007 | 0500 | 1 Tab | | H Williams | IHS |
| 2-24 | 2007 | 0500 | 1 Tab | | H Williams | IHS |
| 2-25 | 2007 | 0500 | 1 Tab | | R Money | IHS |
| 2-26 | 2007 | 0500 | 1 Tab | | Williams | IHS |
| 2-27 | 2007 | 0500 | 1 Tab | | Lt Scott | IHS |
| 2-28 | 2007 | 0500 | 1 Tab | | R Money | IHS |
| 3-01 | 2007 | 0500 | 1 tab | | H Williams | IHS |
| 3-02 | 2007 | 0500 | 1 tab | | H Williams | IHS |

DATE IN FOR REFILL _____

DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

**COFFEE COUNTY JAIL**

**ACA STANDARD FORM 2-133**

**MEDICATION SHEET**

| NAME: | Anthony Richards | | FEDERAL: |
|---|---|---|---|
| MEDICATION: | Tramadol Hcl 50mg | STATE: | |
| RX INSTRUCTIONS: | 2 Tabs 4X A day | COUNTY: | |
| | IHS | CELLBLOCK 4 | CITY: |

| DATE | YR | TIME ISSUED | AMT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-17 | 2007 | 1200 | 2 tabs | Anthony Richard | S. Roberts | IHS |
| 2-17 | 2007 | 1800 | 2 Tabs | Anthony Richard | MM | IHS |
| 2-17 | 2007 | 2200 | 2 Tabs | Anthony Richard | MM | IHS |
| 2-18 | 2007 | 0500 | 2 Tabs | Anthony Richard | B. Williams | IHS |
| 2-18 | 2007 | 1200 | 2 Tabs | Anthony Richard | B Williams | IHS |
| 2-18 | 2007 | 1800 | 2 Tabs | Anthony Richard | B Williams | IHS |
| 2-18 | 2007 | 2200 | 2 Tabs | Anthony Richard | B Williams | IHS |
| 2-19 | 2007 | 0500 | 2 Tabs | Anthony Richard | | IHS |
| 2-19 | 2007 | 1200 | 2 Tabs | Anthony Richard | MM | IHS |
| 2-19 | 2007 | 1800 | 2 Tabs | Anthony Richard | | IHS |
| 2-19 | 2007 | 2200 | 2 Tabs | Anthony Richard | Cole | IHS |
| 2-20 | 2007 | 0500 | 2 Tabs | Anthony Richard | Cole | IHS |
| 2-20 | 2007 | 1200 | 2 Tabs | Anthony Richard | Cole | IHS |
| 2-22 | 2007 | 1800 | 2 Tabs | Anthony Richard | S. Roberts | IHS |
| 2-20 | 2007 | 1800 | 2 Tabs | Anthony Richard | S. Roberts | IHS |
| 2-21 | 2007 | 0500 | 2 Tabs | Anthony Richard | Lynn Cann | IHS |
| 2-21 | 2007 | 1200 | 2 Tabs | Anthony Richard | S. Roberts | IHS |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

Case 1:07-cv-00261-WKW-SRW   Document 29-3   Filed 06/15/2007   Page 2 of 36

NAME: Anthony Richards

MEDICATION: Tramadol HCl 50mg

R/INSTRUCTIONS: 2 Tab 4X daily

MEDICATIONS: 2 Tab 4X daily  THS

| | | COFFEE COUNTY JAIL | FEDERAL: |
|---|---|---|---|
| | | ACA STANDARD FORM 2-2133 | STATE: |
| | | MEDICATION SHEET | COUNTY: |
| | | CELLBLOCK 4 | CITY: |

| DATE | YR | TIME ISSUED | AMT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-21 | 2007 | 1800 | 2 Tabs | Anthony Richards | W Williams | IHS |
| 2-22 | 2007 | 0500 | 2 Tabs | Anthony Richards | | IHS |
| 2-22 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 2-22 | 2007 | 1800 | 2 Tabs | Anthony Richards | Jane Dop | IHS |
| 2-23 | 2007 | 2200 | 2 Tabs | Anthony Richards | Jane Dop | IHS |
| 2-23 | 2007 | 0500 | 2 Tabs | Anthony Richards | | IHS |
| 2-23 | 2007 | 1200 | 2 Tabs | Anthony Richards | W Williams | IHS |
| 2-23 | 2007 | 1800 | 2 Tabs | Anthony Richards | Dallas Durden | IHS |
| 2-23 | 2007 | 2200 | 2 Tabs | Anthony Richards | | IHS |
| 2-23 | 2007 | 0500 | 2 Tabs | Anthony Richards | | IHS |
| 2-24 | 2007 | 1200 | 2 Tabs | Anthony Richards | Viney | IHS |
| 2-24 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 2-24 | 2007 | 1800 | 2 Tabs | Anthony Richards | JDueet | IHS |
| 2-24 | 2007 | 2200 | 2 Tabs | Anthony Richards | MRL | IHS |
| 2-25 | 2007 | 0500 | 2 Tabs | Anthony Richards | BMoney | IHS |
| 2-25 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 2-25 | 2007 | 1800 | 2 Tabs | Anthony Richards | FT | IHS |

DATE IN FOR REFILL _____

DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

**NAME:** Anthony Richards

**MEDICATION:** Piroxicam 20 mg

**RX INSTRUCTIONS:** 1 Cap 1X A day

Blister package

COFFEE COUNTY JAIL

ACA STANDARD FORM 2-2133

MEDICATION SHEET

CELLBLOCK 4

FEDERAL:
STATE:
COUNTY:
CITY:

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-11 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-12 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-13 | 2007 | 0500 | 1 Tab | Anthony Richards | JW | FT |
| 2-14 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | FT |
| 2-15 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-16 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-17 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-18 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-19 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-20 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-21 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | FT |
| 2-22 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-23 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-24 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |
| 2-25 | 2007 | 0500 | 1 Tab | Anthony Richards | J Mones | JW |
| 2-26 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | JW |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

Case 1:07-cv-00261-WKW-SRW    Document 29-3    Filed 06/15/2007    Page 11 of 36

**COFFEE COUNTY JAIL**

**ACA STANDARD FORM 2-2133**

**MEDICATION SHEET**

NAME: Anthony Richards

MEDICATION: Proxicam 20 mg

RX INSTRUCTIONS: 1 Cap 1X A day

| | | FEDERAL: |
|---|---|---|
| | STATE: | |
| | COUNTY: | |
| CELLBLOCK: 4 | CITY: | |

Blister Package

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-27 | 2007 | 0500 | 1 Cap | | | FT |
| 2-28 | 2007 | 0500 | 1 Cap | | | FT |
| 3-01 | 2007 | 0500 | 1 Cap | | | AW |
| 3-02 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-03 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-04 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-5 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-6 | 2007 | 0500 | 1 Cap | Anthony Richards | Williams | FT |
| 3-6 | 2007 | 0500 | 1 Cap | Anthony Richards | Shelton | FT |
| 3-7 | 2007 | 0500 | 1 Cap | | Ivory Ceas | Claes |
| 3-8 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-9 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-10 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-11 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-12 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-13 | 2007 | 0500 | 1 Cap | | Williams | AW |
| 3-3 | 2007 | 0500 | Cap | | | AW |
| 3-4 | 2007 | 0500 | 1 Cap | | | Ryone |

DATE IN FOR REFILL _____    DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

**COFFEE COUNTY JAIL**
**ACA STANDARD FORM 2-2133**
**MEDICATION SHEET**
**CELLBLOCK 4**

FEDERAL:
STATE:
COUNTY:
CITY:

NAME: Anthony Richards
MEDICATION: Tramadol HCl 50mg
RX INSTRUCTIONS: 2 Tab 4x A day
IHS

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|------|----|-----|------|------|------|------|
| 2-25 | 2007 | 2200 | 2 Tabs | Anthony Richards | | IHS |
| 2-26 | 2007 | 0500 | 2 Tabs | Anthony Richards | | IHS |
| 2-26 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 2-26 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 2-26 | 2007 | 1800 | 2 Tabs | Anthony Richards | Col | IHS |
| 2-26 | 2007 | 2300 | 2 Tabs | Anthony Richards | | IHS |
| 2-27 | 2007 | 0500 | 2 Tabs | Anthony Richards | | IHS |
| 2-27 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 2-27 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 2-27 | 2007 | 2200 | 2 Tabs | Anthony Richards | | IHS |
| 2-28 | 2007 | 0500 | 2 Tabs | Anthony Richards | | IHS |
| 2-28 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 2-28 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 2-28 | 2007 | 2200 | 2 Tabs | Anthony Richards | | IHS |
| 3-01 | 2007 | 0500 | 2 Tabs | Anthony Richards | H. Williams | IHS |
| 3-01 | 2007 | 1200 | 2 Tabs | Anthony Richards | Nash | IHS |
| 3-01 | 2007 | 1800 | 2 Tabs | Anthony Richards | Nash | IHS |

DATE IN FOR REFILL _____

DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

**COFFEE COUNTY JAIL**
**ACA STANDARD FORM 2-2133**
**MEDICATION SHEET**

| | | |
|---|---|---|
| FEDERAL: | | |
| STATE: | | |
| COUNTY: | | |
| CITY: | | |

NAME: Anthony Richards

MEDICATION: Tramadol HCL 50mg

RX INSTRUCTIONS: 2 Tabs 4 x A day

CELLBLOCK 4

IHS

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3-01 | 2007 | 2300 | 2 Tabs | Anthony Richards | | IHS |
| 3-02 | 2007 | 0530 | 2 Tabs | Anthony Richards | | IHS |
| 3-02 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 3-02 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 3-02 | 2007 | 2200 | 2 Tabs | Anthony Richards | | IHS |
| 3-03 | 2007 | 0500 | 2 Tabs | Anthony Richards | | IHS |
| 3-03 | 2007 | 1200 | 2 Tabs | Anthony Richards | | IHS |
| 3-03 | 2007 | 1800 | 2 Tabs | Anthony Richards | | IHS |
| 3-03 | 2007 | 2200 | 2 Tabs | Anthony Richard | | IHS |
| | 2007 | | | out | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |

DATE IN FOR REFILL _____   DATE REFILLED _____   DATE MED OUT w/NO REFILL _____

239

**COFFEE COUNTY JAIL**

NAME: Anthony Richards

MEDICATION: Glipizide 5 mg

RX INSTRUCTIONS: 1 Tab 1 X A day    IHS

ACA STANDARD FORM 2-2133

MEDICATION SHEET

CELLBLOCK 4

| FEDERAL: | |
|---|---|
| STATE: | |
| COUNTY: | |
| CITY: | |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3-3 | 2007 | 0500 | 1 Tab | | W Williams | IHS |
| 3-4 | 2007 | 0500 | 1 Tab | | W Williams | IHS |
| 3-5 | 2007 | 0500 | 1 Tab | | W Williams | IHS |
| 3-6 | 2007 | 0500 | 1 Tab | Anthony Richards | W Williams | IHS |
| 3-7 | 2007 | 0500 | 1 Tab | | Lewis Oser | IHS |
| 3-8 | 2007 | 0500 | 1 Tab | | W Williams | IHS |
| 3-9 | 2007 | 0500 | 1 Tab | Anthony Richards | W Williams | IHS |
| 3-10 | 2007 | 0500 | 1 Tab | Anthony Richards | W Williams | IHS |
| 3-11 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | IHS |
| 3-12 | 2007 | 0500 | 1 Tab | Anthony Richards | W Williams | IHS |
| 3-3 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | IHS |
| 3-4 | 2007 | 0500 | 1 Tab | anthony richards | | IHS |
| 3-15 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | IHS |
| 3-16 | 2007 | 0500 | 1 Tab | anthony richards | W Williams | IHS |
| 3-17 | 2007 | 0500 | 1 Tab | Anthony Richards | W Williams | IHS |
| 3-18 | 2007 | 0500 | 1 Tab | Anthony Richards | M Rowles | IHS |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

**COFFEE COUNTY JAIL**

| | |
|---|---|
| NAME: Anthony Richards | FEDERAL: |
| MEDICATION: IBuprophen | STATE: |
| | COUNTY: |
| RX INSTRUCTIONS: 2 Tab 3x daily | CITY: |

ACA STANDARD FORM 2-2133

MEDICATION SHEET

CELLBLOCK C4

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3-9 | 2007 | 1200 | 2 Tabs | anthony richard | S. Roberts | S. R. |
| 3-9 | 2007 | 1800 | 2 Tabs | | | |
| 3-10 | 2007 | 0500 | 2 tabs | anthony Richards | | |
| 3-10 | 2007 | 1200 | 2 Tabs | anthony richards | | |
| 3-10 | 2007 | 1800 | 2 tabs | anthony Richards | | |
| 3-11 | 2007 | 0500 | 2 Tabs | Anthony Richards | | |
| 3-11 | 2007 | 1200 | 2 Tabs | Anthony Richards | | |
| 3-11 | 2007 | 1800 | 2 Tabs | | | |
| 3-12 | 2007 | 0500 | 2 Tabs | | | |
| 3-12 | 2007 | 1200 | 2 Tabs | Anthony Richards | | |
| | 2007 | | out | out | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |

DATE IN FOR REFILL _____   DATE REFILLED _____   DATE MED OUT w/NO REFILL _____

**NAME:** Anthony Richards

**MEDICATION:** Piroxicam 20mg

**RX INSTRUCTIONS:** 1cap 1 X a day

Blister Package

**COFFEE COUNTY JAIL**

ACA STANDARD FORM 2-2133

MEDICATION SHEET

| | FEDERAL: |
|---|---|
| | STATE: |
| | COUNTY: |
| CELLBLOCK 4 | CITY: |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3-15 | 2007 | 0500 | 1 Cap | Anthony Richard | L Williams | LW |
| 3-16 | 2007 | 0500 | 1 Cap | Anthony Richard | L Williams | LW |
| 3-17 | 2007 | 0500 | 1 Cap | Anthony Richards | L Williams | LW |
| 3-18 | 2007 | 0500 | 1 Cap | Anthony Richards | McRevial | LW |
| 3-19 | 2007 | 0500 | 1 Cap | Anthony Richards | L Williams | LW |
| 3-20 | 2007 | 0500 | 1 Cap | Anthony Richard | R. English | LW |
| 3-21 | 2007 | 0500 | 1 cap | Anthony Richard | K. English | LW |
| 3-22 | 2007 | 0500 | 1 cap | Anthony Richard | L Williams | LW |
| | 2007 | | | out of meds. | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |

DATE IN FOR REFILL _____     DATE REFILLED _____     DATE MED OUT w/NO REFILL _____

**NAME:** Anthony Richards
**MEDICATION:** Glipizide 5mg
**RX INSTRUCTIONS:** 1 Tab 1 X A Day
IHS

## COFFEE COUNTY JAIL
### ACA STANDARD FORM 2-2133
### MEDICATION SHEET — CELLBLOCK 4

FEDERAL:   STATE:   COUNTY:   CITY:

| DATE | YR | TIME ISSUED | AMT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3-19 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | |
| 3-20 | 2007 | 0500 | 1 Tab | Anthony Richards | K. English | IHS |
| 3-21 | 2007 | 0500 | 1 Tab | Anthony Richards | K. English | IHS |
| 3-22 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | IHS |
| 3-23 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | IHS |
| 3-24 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | IHS |
| 3-25 | 2007 | 0500 | 1 Tab | Anthony Richards | J Williams | IHS |
| 3-26 | 2007 | 0500 | 1 Tab | Anthony R | J Williams | IHS |
| 3-27 | 2007 | 0500 | 1 Tab | Anthony R | JW | IHS |
| 3-28 | 2007 | 0500 | 1 Tab | | | IHS |
| 3-29 | 2007 | 0500 | 1 Tab | | | IHS |
| 3-30 | 2007 | 0500 | 1 Tab | | MR | IHS |
| 3/31 | 2007 | 0500 | 1 Tab | Anthony Richard | RB | IHS |
| 4-1 | 2007 | 0500 | 1 Tab | Anthony Richard | J Williams | IHS |
| 4-2 | 2007 | 0500 | 1 Tab | Anthony Richard | J Williams | IHS |
| 04-03 | 2007 | 0500 | 1 Tab | Anthony Richard | CR | IHS |

**NAME:** Anthony Richard

**MEDICATION:** Alprazolam 500 mg

**R/X INSTRUCTIONS:** 1 Tab 2x daily

COFFEE COUNTY JAIL

ACA STANDARD FORM 2-2133

MEDICATION SHEET

**CELLBLOCK** 4

**FEDERAL:**

**STATE:**

**COUNTY:**

**CITY:**

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3-22 | 2007 | 1800 | 1 Tab | Anthony Richard | OR | IHS |
| 3-23 | 2007 | 0500 | 1 Tab | | Williams | IHS |
| 3-23 | 2007 | 1800 | 1 Tab | | | IHS |
| 3-24 | 2007 | 0500 | 1 Tab | | Williams | IHS |
| 3-24 | 2007 | 1800 | 1 Tab | | | IHS |
| 3-25 | 2007 | 0500 | 1 Tab | | | IHS |
| 3-25 | 2007 | 1800 | 1 Tab | | | IHS |
| 3-26 | 2007 | 0500 | 1 Tab | | Williams | IHS |
| 3-26 | 2007 | 1800 | 1 Tab | | | IHS |
| 3-27 | 2007 | 0500 | 1 Tab | | | IHS |
| 3-27 | 2007 | 1800 | 1 Tab | | | IHS |
| 3-28 | 2007 | 0500 | 1 Tab | | | IHS |
| 3-28 | 2007 | 1800 | 1 Tab | | | IHS |
| 3-29 | 2007 | 0500 | 1 Tab | | | IHS |
| 3-29 | 2007 | 1800 | 1 Tab | | | IHS |
| | 2007 | | | | | |

NAME: Anthony Richards

MEDICATION: Methadone 500mg

RX INSTRUCTIONS: 2x daily

| | | COFFEE COUNTY JAIL | | | FEDERAL: |
|---|---|---|---|---|---|
| | | ACA STANDARD FORM 2-2133 | | | STATE: |
| | | MEDICATION SHEET | | | COUNTY: |
| | | CELLBLOCK-4 | | | CITY: |

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3/30 | 2007 | 0500 | 1 tab | Anthony Richards | MB | JWB |
| 3/30 | 2007 | 1800 | 1 tab | Anthony Richards | RCB | JWB |
| 3/31 | 2007 | 0500 | 1 tab | Anthony Richards | | IHS |
| 3/31 | 2007 | 1800 | 1 tab | Anthony Richards | | IHS |
| 4-1 | 2007 | 0500 | 1 Tab | Anthony Richards | | IHS |
| 4-1 | 2007 | 1800 | 1 Tab | Anthony Richards | HWilliams | IHS |
| 4-2 | 2007 | 0500 | 1 Tab | Anthony Richards | HWilliams | IHS |
| 4-2 | 2007 | 1800 | 1 Tab | Anthony Richards | MM | IHS |
| 04-03 | 2007 | 0500 | 1 tab | Anthony Richards | CR | IHS |
| 04-03 | 2007 | 1800 | 1 tab | Anthony Richards | MM | IHS |
| 04-04 | 2007 | 0500 | 1 tab | Anthony Richards | MM | IHS |
| 04-04 | 2007 | 1800 | 1 tab | Anthony Richards | | IHS |
| 4-5 | 2007 | 0500 | 1 Tab | Anthony Richards | HWilliams | IHS |
| 4-6 | 2007 | 0500 | 1 tab | Anthony Richards | | IHS |
| | 2007 | | | | | |
| | 2007 | | | | | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

NAME: Anthony Richards

MEDICATION: Glipizide 5mg

RX INSTRUCTIONS: 1 tab 1xaday

IHS

| | COFFEE COUNTY JAIL | FEDERAL: |
| --- | --- | --- |
| | ACA STANDARD FORM 2-2113 | STATE: |
| | MEDICATION SHEET | COUNTY: |
| | CELLBLOCK 4 | CITY: |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
| --- | --- | --- | --- | --- | --- | --- |
| 04-04 | 2007 | 0500 | 1 tab | anthony Richards | | IHS |
| 4-5 | 2007 | 0500 | 1 tab | anthony Richar | | IHS |
| 4-6 | 2007 | 0500 | 1 Tab | anthony Ri | | IHS |
| 4-7 | 2007 | 0500 | 1 Tab | anthony ri | | IHS |
| 4-8 | 2007 | 0500 | 1 tab | anthony Richards | | IHS |
| 4-9 | 2007 | 0500 | 1 tab | anthony Richards | | IHS |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |

NAME: Anthony Richards

MEDICATION: Cyclobenzaprine 10MG

RX INSTRUCTIONS: 1 Tab 3x daily

COFFEE COUNTY JAIL

ACA STANDARD FORM 2-2133

MEDICATION SHEET CELLBLOCK 4

FEDERAL:

STATE:

COUNTY:

CITY:

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 4-4 | 2007 | 1800 | 1 Tab | | | IHS |
| 4-5 | 2007 | 0500 | 1 Tab | Anthony Richards | H Williams | IHS |
| 4-5 | 2007 | 1200 | 1 Tab | Anthony Richards | | IHS |
| 4-5 | 2007 | 1800 | 1 Tab | Anthony Richards | | IHS |
| 4-6 | 2007 | 0500 | 1 Tab | Anthony Richards | | IHS |
| 4-6 | 2007 | 1200 | 1 Tab | Anthony Richards | | IHS |
| 4-6 | 2007 | 1800 | 1 Tab | Anthony Richards | | IHS |
| 4-6 | 2007 | 0500 | 1 Tab | Anthony Richards | | IHS |
| 4-7 | 2007 | 1200 | 1 Tab | Anthony Richards | | IHS |
| 4-7 | 2007 | 1800 | 1 Tab | Anthony Richards | | IHS |
| 4-7 | 2007 | 0500 | 1 Tab | Anthony Richards | | IHS |
| 4-7 | 2007 | 1200 | 1 Tab | Anthony Richards | | IHS |
| 4-8 | 2007 | 1800 | 1 Tab | Anthony Richards | | IHS |
| 4-8 | 2007 | 0500 | 1 Tab | Anthony Richards | | IHS |
| 4-8 | 2007 | 1200 | 1 Tab | Anthony Richards | | IHS |
| 4-8 | 2007 | 1800 | 1 Tab | Anthony Richard | OR | IHS |
| 4-9 | 2007 | 0500 | 1 Tab | Anthony | | IHS |
| 4-9 | 2007 | 1800 | 1 Tab | Anthony Richard | | IHS |
| 4-9 | 2007 | 1800 | 1 Tab | ONE | | IHS |

DATE IN FOR REFILL _____

DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

Coffee County Jail
Dave Sutton Sheriff
Capt. Richard B. Moss Administrator
Phone 334-894-6200
Fax 334-894-6231
Medical Transport Sheet

Date _4/2/07_

Name of Inmate _Anthony Richards_

Reason for Medical Care _Dr Appt_

_____

Transported from _Coffee County Jail_

Transported to _Dr. Melvi (Elba)_

Time of Transport _1530_

Transporting Officer _A. Baxley_

Inmate Classification (Check One)

Federal_____
State_____
County____✓_____
Enterprise_____
Elba_____
New Brockton_____
Kinston_____

This form is to be completed for each inmate receiving medical treatment.

**COPY**

"Richards"

ANTHONY RICHARDS, do request to a to see a doctor for my Diabetes. I've been here for a week and I have no medication. Im starting to feel dizzy and light headed. Ive made several request to see a doctor. My lastest request was made to C/O Mike Paul 3rd shift. I would like a copy of this to go to the Jail administrator, The sheriff and the head Jailer, which should be Ms. Ruth.

1st DINE THIS DAY 23RD MONTH (AND), YEAR 2007.

WITNESS.    Byron Williams
            Shere Paris
            Antonio Glover

            SIGNATURE.
            Anthony Richards

10:15

Dear cpt. Moss,

I ran out of my Diabetic medication on friday can yall please call my Doctor and have him order me some glucatrol 5mg. pills. His name is "Pink L. Folmar out of Brundidge, Al. Thank you!

P.S.
I'm still waiting to hear Back From you on that confidential issue we disscussed and about me going to work

From: Anthony Richards
CB4

Anthony                           d5

CB4

IHS Pharmacy
1-800-638-3104

Cell #5

name is Pink L. Folmar out
ndidge, Al. I need to get him
in my Perscription for "Ultram"
y Knee and Back pains. Can yall
e get this filled for me. Thank you
o Captain Moss, I need to talk one on one
with you about several very important subjects.
Please call me to your office.

Thank you

Inmate

1-19-63          Anthony Richards

CB4

cell #5

I HS Pharmacy
1-800-638-3104



Coffee County Jail
Dave Sutton Sheriff
Capt. Richard B. Moss Administrator
Phone 334-894-6200
Fax 334-894-6231
Medical Transport Sheet

Date _3-20-07_

Name of Inmate _Anthony Richards_

Reason for Medical Care _Dr. Appt._

Transported from _County Jail_

Transported to _Dr. Malony (Elba)_

Time of Transport _1308_

Transporting Officer _H. Petty_

Inmate Classification (Check One)

Federal_____
State_____
County___X_____
Enterprise_____
Elba_____
New Brockton_____
Kinston_____

This form is to be completed for each inmate receiving medical treatment.



Coffee County Jail
Dave Sutton.Sheriff
Capt. Richard B. Moss Administrator
Phone 334-894-6200
Fax 334-894-6231
Medical Transport Sheet

Date *3-09-07*

Name of Inmate *Richards, Anthony*

Reason for Medical Care *Accident*

Transported from *CCJ*

Transported to *Elba Hosp.*

Time of Transport *0910*

Transporting Officer *Casadine*

Inmate Classification (Check One)

Federal _____
State _____
County ___ *X* ___
Enterprise _____
Elba _____
New Brockton _____
Kinston _____

This form is to be completed for each inmate receiving medical treatment.

Coffee County Jail
Dave Sutton Sheriff
Capt. Richard B. Moss Administrator
Phone 334-894-6200
Fax 334-894-6231
Medical Transport Sheet

**COPY**

Date _3/21/2007_

Name of Inmate _Richards, ANTHONY_

Reason for Medical Care _Tured on Knife_

Transported from _CCJ_

Transported to _Dr. Little_

Time of Transport _13:15_

Transporting Officer _C/o Casadine_

Inmate Classification (Check One)

Federal _____
State _____
County _X_____
Enterprise _____
Elba _____
New Brockton _____
Kinston _____

This form is to be completed for each inmate receiving medical treatment.